### UNITED STATES of America, Plaintiff-Appellee,

#### v.

### Miguel RODRIGUEZ, William Lara, and Jose Luis Pizarro, Defendants-Appellants.

#### Nos. 79–2182, 79–2183 and 79–2220.

United States Court of Appeals, Seventh Circuit.

Argued June 13, 1980.

Decided Aug. 12, 1980.

Michael G. Cheronis, Chicago, Ill., Michael B. Mann, Maywood, Ill., Nicholas A. De-John, Chicago, Ill., for defendants-appellants.

Thomas P. Sullivan, U. S. Atty., Michael Siegel, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, WOOD, Circuit Judge, and LARSON, Senior District Judge.[*]

HARLINGTON WOOD, Jr., Circuit Judge.

A federal prosecutor in final argument has done it again. A mere reading of a portion of the trial transcript makes clear that his comments on defendants' failure to testify violated their rights under the Fifth Amendment and 18 U.S.C. § 3481.[1]

---

* Senior District Judge Earl R. Larson of the District of Minnesota is sitting by designation.

1. 18 U.S.C. § 3481 provides:

    In trial of all persons charged with the commission of offenses against the United States

The following exchange took place during the government's rebuttal: [2]

Mr. Hosteny: The last one that I want to go to for a few minutes is what we regard, and what you should regard, as the most important person in the case, and that is Jose Pizarro. Jose Pizarro throughout the trial has been very quiet at the end of counsel table—

Mr. Cutrone: Objection.

Mr. Cheronis: Object.

Mr. Hosteny: Well, I mean, he's been at counsel table.

Mr. Cutrone: Motion for mistrial.

Mr. Cheronis: Motion for a mistrial on behalf of Mr. Rodriguez.

Mr. DeJohn: Join.

Mr. Hosteny: I will withdraw the other remark, Judge.

The Court: Yes.

Mr. Hosteny: He has been very quiet, quietly apparent throughout this case—

Mr. Cutrone: Objection, if your Honor please.

Mr. DeJohn: Could we have a side bar, please?

The Court: Yes, I—

Mr. DeJohn: It's very serious, Judge.

The Court: There is no purpose in a side bar. I understand what your objection is and counsel will proceed with his argument.

Mr. Hosteny: I will withdraw the remark, Judge.

Mr. DeJohn: Withdraw it? It's already said.

Mr. Cutrone: I move for a mistrial.

Mr. Cheronis: Move for a mistrial, Judge.

Mr. DeJohn: This man has constantly—

The Court: Just a minute. I'm going to advise the jury that he has no—

Mr. DeJohn: He is inferring that— making it seem like there is something wrong with remaining silent—

Mr. Cheronis: It affects all the defendants when the—

The Court: Well, there are three of you and will you please sit down and I will advise the jury and I will advise them now that there was no obligation on any one of the defendants in this case to take the witness stand. Counsel for the government should have made no statement as to the fact that he was very quiet during this case. He had the right to be very quiet during this case. And it was improper for the government to make any such statement—

Mr. Hosteny: I apologize, Judge. I am sorry.

The Court: You can talk about his counsel but not talk about him.

Mr. Cutrone: That's right. Talk about me. I've been very, very quiet.

The Court: All right, You may be seated now. You've made your statement and I've made mine and I want the jury to regard the statement that the government made, that he had been very quiet, if that has any indication to you that he should have spoken up, forget that because he had no obligation whatever to speak up during his case, at any time.

Mr. Cheronis: Judge, can that apply to all defendants?

The Court: Well, that does apply to each one of you, of the three defendants, and I've made that very clear and I will tell the jury again in the instructions, and so you may proceed on that basis.

Mr. Hosteny: Thank you, Judge. I'd like to apologize to the jury and to the Court and also to Mr. Cutrone and Mr. Pizarro.

During the government's rebuttal argument, the last opportunity of any counsel to

---

and in all proceedings in courts martial and courts of inquiry in any State, District, Possession or Territory, the person charged shall, at his own request, be a competent witness. His failure to make such request shall not create any presumption against him.

2. Mr. Hosteny is an Assistant United States Attorney for the Northern District of Illinois, Mr. Cutrone represented Pizarro, Mr. DeJohn represented Lara, and Mr. Cheronis represented Rodriguez.

address the jury, the prosecutor directly commented not once, but twice, on the trial silence of defendant Jose Pizarro. First, the prosecutor drew the attention of the jury to the fact that Pizarro "has been very quiet at the end of counsel table." Then, after objection and motion for a mistrial, the prosecutor withdrew the remark, but for some inexplicable reason promptly said it again. Pizarro, he said the second time, "has been very quiet, quietly apparent throughout this case." Another objection followed and another motion for mistrial was denied in favor of the trial judge's immediate instruction to the jury. The judge instructed that none of the defendants were obligated to take the witness stand and that there was a right "to be very quiet during this case." The instruction in addition specifically advised that there was no obligation on the part of any defendant to take the witness stand. Counsel for one of the other defendants then asked if the instruction could apply to all defendants. The trial judge repeated that his instruction applied to each of the three defendants, none of whom had testified. But the damage was already done and was irreparable.

Factually, there is nothing about this multiple count heroin case involving two other defendants, William Lara and Miguel Rodriguez, to distinguish it from a score of others. The jury found all three guilty.[3]

We view the issue from a slightly different perspective than does a trial judge. The problem is not new. It continues to arise with disturbing frequency throughout this circuit despite the admonition of trial judges and this court. Usually it has been caused by subtle prosecutorial comments, e. g., that certain evidence is "uncontradicted." Even subtle references to the fact that a defendant has not testified have been condemned.

On February 27, 1979 in the case of United States v. Pleas Moody, No. 78–1981, an unpublished order, we called attention to our then recent decision, United States v.

Buege, 578 F.2d 187 (7th Cir.), cert. denied, 439 U.S. 871, 99 S.Ct. 203, 58 L.Ed.2d 183 (1978), cautioning prosecutors about the use of improper arguments which draw even subtle attention to the failure of a defendant to testify. We cautioned against the use of terms such as "undisputed" and "uncontradicted" by the prosecutor in the case of a nontestifying defendant. It was pointed out that it is an area where the administration of justice will be served by avoiding arguably as well as blatantly improper comments. The final line of the order cautioned that continued failure to heed the admonition of this court would demonstrate that the admonition was ineffective, calling, therefore, for summary reversal. That unpublished order is not unknown to the United States Attorneys of this circuit. By order of Chief Judge Fairchild, the Clerk of this court forwarded a copy of the Moody order to each United States Attorney, directing attention to the warning it contained, together with this court's suggestion that United States Attorneys disseminate copies of the order to all their Assistants or circulate their own memorandum on the subject. This court is beginning to experience a similar sense of futility from the persistent disregard of prior admonitions as was experienced by the First Circuit. See United States v. Flannery, 451 F.2d 880, 882 (1st Cir. 1971). That circuit was prompted to adopt a rule that even a prosecutor's subtle comments would be held prejudicial as a matter of law. There would be no effort to weigh the evidence. A single exception was provided. No prejudice would necessarily be found, the court ruled, if the trial judge interrupted the argument, instructed the jury fully on the defendant's constitutional right not to testify and the jury's obligation not to draw unfavorable inferences, and, in addition, stated to the jury that the United States Attorney was guilty of misconduct. If the circumstances are not within the confines of that exception, reversal would be automatic. The direct, not subtle, references in the present

---

**3.** Lara was sentenced to three years, Rodriguez to four years, and Pizarro to ten years together with a $10,000 fine and a special parole term of fifteen years.

case would not fit within the First Circuit exception even assuming the other conditions of the exception had been satisfied. Even at this late date, after unheeded admonitions, but with confidence in the United States Attorneys in this circuit, we decline to adopt so strict a rule.

██ Our rule will for the present remain as it has been, though we do not intend to search the record for alibis for United States Attorneys in order to save an otherwise valid conviction. Continued violation of this court's admonition we would expect to be of some concern to the Attorney General. An arguably improper remark will require determination of its probable effect on the jury in combination with all the evidence presented. If the evidence of guilt is sufficient to find beyond a reasonable doubt that the error was harmless, reversal may not be required. *United States v. Buege*, 578 F.2d 187, 189 (7th Cir. 1978). In the present case, we do not view the evidence of guilt as sufficient to erase the seriously prejudicial direct reference.

Over the past decade or so this court has had to make similar determinations of the effect in various trial circumstances of what the prosecutor said, taking into consideration what the trial judge did to correct the improper remarks, and weighing the evidence of guilt. The following selection of cases is illustrative: *United States v. Muscarella*, 585 F.2d 242, 249–50 (7th Cir. 1978); *United States v. Fearns*, 501 F.2d 486, 488–90 (7th Cir. 1974); *United States v. Handman*, 447 F.2d 853, 855–56 (7th Cir. 1971); *United States v. Lyon*, 397 F.2d 505, 509 (7th Cir.), *cert. denied*, 393 U.S. 846, 89 S.Ct. 131, 21 L.Ed.2d 117 (1968); *United States v. Wright*, 309 F.2d 735, 738–39 (7th Cir. 1962), *cert. denied*, 327 U.S. 929, 83 S.Ct. 873, 9 L.Ed.2d 733 (1963). A defendant's liberty should not so often depend upon our struggle with the particular circumstances of a case to determine from a cold record whether or not the prosecutor's

remarks were harmless. The remarks, harmless or not, infringing upon such a basic and elementary constitutional underpinning of our justice system, simply should not occur.

Two other "silent" defendants were tried with Pizarro. No defendant testified. Even so it could be argued that since the prosecutor singled out only Pizarro by name that the other two "silent" defendants somehow slipped through the episode without their equally silent behavior being prejudicially noticed by the jury. We will not close our eyes to the probabilities of courtroom dynamics. These three "silent" defendants were sitting together charged jointly in a criminal enterprise. The government triggered the problem by directing the comments to Pizarro, but as is to be expected it quickly engulfed the other two defendants. Any defense counsel who did not seek to protect his own "silent" client from the startling eruption of prejudice would run the risk of being derelict in his own duty. All defense counsel objected and moved for a mistrial. The trial judge in his initial instruction to the jury advised that there "was no obligation on any one of the defendants" to take the stand. Each defendant was obviously touched by the error. Defense counsel then asked that the trial judge make clear that each defendant was protected by the instruction for whatever good it might do. As the mistrial motions had been overruled, there was nothing else defense counsel could do. There is no realistic way we can say in these circumstances that all the "silent" defendants were not prejudiced by the comments and that the error as to any defendant was harmless beyond a reasonable doubt.

We do not intend even in the slightest to demean the particular Assistant United States Attorney involved here.[4] We have no reason to believe that he may not be a

---

**4.** The Assistant United States Attorney, outside the presence of the jury, apologized and acknowledged his remark was mistaken. He explained that what he had intended to say was not that Pizarro did not testify, but that Pizarro

"had been very quiet throughout the deals that were going on in the case." As defense counsel pointed out, however, that unfortunately was not what he said to the jury.

very capable and dedicated prosecutor in spite of this one error committed under the pressure of trial. As we have indicated he is far from the first to err in this fashion, or to come perilously close to the "edge of the precipice," *Rodriquez-Sandoval v. United States*, 409 F.2d 529, 531 (1st Cir. 1969), *cert. denied*, 414 U.S. 869, 94 S.Ct. 180, 38 L.Ed.2d 115 (1973), but we do hope he will be the last.

The motion for a mistrial should have been allowed. We therefore reverse and remand for a new trial for all defendants.

LARSON, Senior District Judge, dissenting:

I respectfully dissent.

I agree with the sentiments expressed in the majority opinion and I appreciate the frustration felt by the majority at the continued inexcusable violations of defendants' Fifth Amendment rights by federal prosecutors. I cannot agree, however, that a new trial is necessary or proper.

As I understand the traditional test by which alleged comments on the failure to testify are judged, it requires an examination into whether the language used was intended to be a comment on a failure to testify, or could be taken by the jury to be such a comment. In addition, the harmless error rule is applied to determine if any real prejudice accrued to the defendant.

Almost every case in this Circuit on this issue has dealt with language to the effect that the government's evidence was "unrefuted" or "uncontradicted." Such comments are particularly egregious not only because they direct the jury's attention to the defendant's failure to testify, but also because they serve to buttress the credibility of the government witness who gave the "uncontradicted" testimony. While the comment here may have drawn the jury's attention to Pizarro's failure to testify, as the government concedes, it is not likely that the language used implied that the government witnesses must therefore be telling the truth or that the government's evidence is so overwhelming that it could not be challenged.

In addition, it does not appear to me that this was an intentional comment on a failure to testify. I believe the prosecutor, as he explained, meant to indicate that Mr. Pizarro had been the man behind the scenes. Certainly that fits with the facts of the case. The prosecutor was apparently so flustered by his own mis-statement that he repeated it. The prosecutor's lack of bad faith is shown by his immediate apology not only to the Court and jury, but also to the defendant and his counsel. Furthermore, there is no claim of other aggravating improper argument by the prosecutor, as there often was in past cases. It is difficult to understand how punishment of an unintentional remark by the prosecutor here, which is essentially the effect of the majority decision to grant a new trial, will prevent future *unintentional* improper comments.

Any prejudice here was vitiated by the immediate curative instruction from the district court, which twice told the jury of defendant's right not to testify, and informed the jury that it was wrong for the prosecutor to make the remark. A few minutes later, final instructions were given, including one on the defendant's right to remain silent and not testify, and the jury's obligation not to draw negative inferences from that silence. This final instruction was requested by the defendant *before* any improper statement occurred. Mr. Pizarro's counsel, in his closing argument, which was before the prosecutor made the improper comment, told the jury of his client's right not to testify. The defendant, as is his right as a matter of trial strategy, was therefore the party to first call this issue to the jury's attention. Of course, as the Court has previously recognized, the jurors are always aware of a defendant's failure to testify, and perhaps the best that can be hoped is that after proper instruction they will not draw negative inferences from that failure. *See United States v. Wright*, 309 F.2d 735, 739 (7th Cir. 1962), *cert. denied*, 327 U.S. 929, 83 S.Ct. 873, 9 L.Ed.2d 733 (1963).

There is little doubt in my mind that the defendants were properly convicted. I

would be extremely reluctant to allow these defendants back on the street to pursue their former business pending a new trial, whose outcome may be different.

The Judges of the Seventh Circuit are certainly more familiar with this problem than I, and probably more aware of the steps necessary to correct it. Nonetheless, I cannot agree that a new trial is warranted here, and I would suggest that if the majority opinion is meant to herald a new approach, it be applied only to cases tried after the date of the opinion. *See United States v. Flannery*, 451 F.2d 880, 882 (1st Cir. 1971).