UNITED STATES of America,
Plaintiff-Appellee,

v.

Luther WILKINS, Morris Lewis, and Sam
Gates, Jr., Defendants-Appellants.

Nos. 80–1269, 80–1270 and 80–1409.

United States Court of Appeals,
Seventh Circuit.

Argued May 28, 1981.

Decided Sept. 11, 1981.

Peter R. Meyers, Patrick G. Reardon, Jeffrey S. Blumenthal, Chicago, Ill., for defendants-appellants.

Daniel M. Purdom, Asst. U. S. Atty., Chicago, Ill., Robert Walter Tarun, U. S. Atty., Dept. of Justice, Chicago, Ill., of counsel, for plaintiff-appellee.

Before SWYGERT, Senior Circuit Judge, FAIRCHILD, Circuit Judge, and THOMAS *, Senior District Judge.

SWYGERT, Senior Circuit Judge.

■ This is an appeal from the convictions of three defendants for bank robbery. Because each defendant has raised numerous grounds for reversal pertaining only to him, we will treat each defendant separately.[1]

I

The evidence presented at trial established that on October 15, 1979, Morris Lewis and Curtis Lyons[2] entered the Crawford Savings and Loan Association in South Holland, Illinois. Sam Gates stood at the door of the bank as a lookout. All three men were armed and wore ski masks and gloves. Lewis threatened the tellers, and ordered them to put all their money in the bag he was carrying. The tellers gave him $7,483.98, including $200 in prerecorded bills. Luther Wilkins was waiting in a stolen car outside the bank. Lewis, Lyons, and Gates left the bank and got into the car, and Wilkins drove them away.

A South Holland police officer stopped the car four blocks from the bank. Lewis and Lyons got out of the car, fired shots at the policeman, and fled. Lewis and a police officer were wounded in the exchange of gunfire. Wilkins and Gates were arrested at the car, and the bag containing $7,483.98 and two guns were found inside.

At a suppression hearing, defendant Wilkins testified that during his interrogation by two FBI agents at the South Holland police station, one of the men held a gun to Wilkins's head and said, "One funny move and I'll blow your head off" and, "Before you say anything, was Morris Lewis out there?". Wilkins nodded in response, and then told the agents that Lewis owed him some money, that he met Lewis that morning to collect the debt, and that he thought Lewis was going to sell some cocaine to raise the money.[3] The district court held that the statement must be suppressed because it was obtained by force.

Several hours later, two other FBI agents (not the two men who had previously interrogated Wilkins) gave Wilkins an advice of rights form. Wilkins stated that he understood his rights and wished to waive them, and then signed the form. The agents drove Wilkins to Chicago, and during the trip he repeated in substance the statement he had given to the first two agents in the police station. As to the second statement, the district court found that the two agents in the car had nothing to do with the first interrogation so Wilkins had no reason to fear them, and that Wilkins understood the

---

* The Honorable Daniel H. Thomas, United States Senior District Judge for the District of Alabama, sitting by designation.

1. On April 14, 1981 and on May 10, 1981, defendant Wilkins sent letters to this court asking that new counsel be appointed to represent him in this appeal. On May 14, 1981, his court-appointed counsel filed a motion to withdraw as his counsel. This court ordered that both requests be considered with the case. We hereby deny the motion to withdraw and the request for appointment of new counsel.

Wilkins alleged in his letters to this court that his counsel refused to pursue certain lines of arguments that Wilkins thought were important. A review of the record establishes that defendant's appeal counsel properly evaluated defendant's suggested arguments as meritless.

Further, we find no indication that defense counsel performed in other than a competent, professional manner. See United States v. O'Clair, 451 F.2d 485 (1st Cir. 1971) (per curiam), cert. denied, 409 U.S. 986, 93 S.Ct. 339, 34 L.Ed.2d 252 (1972).

2. Curtis Lyons was not charged with the other three defendants.

3. Although the Government characterized Wilkins's statement as "false exculpatory" evidence, the district court concluded that it was incriminatory because Wilkins had stated that he was with Lewis, a person who allegedly participated in the robbery, on the day the robbery occurred.

advice of rights form and signed it. The court concluded that the second statement was made voluntarily and thus denied the motion to suppress.

Approximately one hour after the robbery on October 15, 1979, Morris Lewis entered a hospital in Merrillville, Indiana for treatment of a gunshot wound. He registered at the hospital as Andrew Watkins, and told hospital personnel and the Merrillville police that he had been wounded earlier that day in Merrillville.

At the suppression hearing, FBI agent Thomas Allison testified that on October 16, 1979, he read an article in the Gary *Evening Tribune* about a man named "Andrew Watkins" who was admitted to the Broadway Methodist Hospital in Merrillville. The agent knew that Andrew Watkins was the half-brother of Lewis and that an arrest warrant had been issued for Lewis in connection with the bank robbery in South Holland.

According to the findings of the district court, at 9:30 p.m. on October 16, Agent Allison arrested Lewis at the hospital. Because Lewis was ambulatory, Allison handcuffed him to the bed pursuant to hospital regulations. Allison read Lewis his rights but did not question him at that time. Then Allison and another agent who had accompanied him left Lewis's room, leaving Lewis in the custody of a hospital security officer.

At about 12:30 a.m. on October 17, the two agents returned to Lewis's hospital room. At that time Lewis read an advice of rights form and signed it, indicating that he wished to waive his rights. The agents then began their interview with Lewis. During the interview, he was alert and sitting up in bed. He was asked several times if he was uncomfortable, and he replied that he was not. He indicated that he wanted to talk to the agents. Although the district court noted that he was under medication, it found that he understood the conversation, and that his statements were made intelligently and voluntarily. During the interview, Lewis told Agent Allison that he robbed the bank in South Holland and that he had been wounded while he was escaping from police. Approximately one hour later, a nurse asked the agents to terminate the interview so that the patient could sleep. The agents left Lewis's room at that time.

II

Defendant Wilkins raises a number of issues. First, he contends that the trial court erred in refusing to suppress his second statement to FBI agents. The prosecution did not introduce the second statement into evidence either in its case-in-chief or in rebuttal. Wilkins, however, asserts that his right to testify in his own behalf was infringed because he knew that if he did take the stand, the second statement might be introduced for impeachment purposes.

 "It is well settled that . . . 'the appellant has both the burden of proving error and of showing that he was prejudiced thereby.'" *United States v. Menk*, 406 F.2d 124, 126 (7th Cir. 1968), *cert. denied*, 395 U.S. 946, 89 S.Ct. 2019, 23 L.Ed.2d 464 (1969) (quoting *Sawyer v. Barczak*, 229 F.2d 805, 809 (7th Cir. 1956)). This burden must "'be sustained . . . *not as a matter of speculation, but as a demonstrable reality.*'" *Buchalter v. New York*, 319 U.S. 427, 431, 63 S.Ct. 1129, 1131, 87 L.Ed. 1492 (1943) (emphasis added) (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 281, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)). Wilkins's contention that he was deterred from testifying by the possibility that the statement would be used to impeach him is too speculative to allow us to conclude that he was prejudiced by the court's failure to suppress the statement.[4] We do not know whether Wilkins would have chosen to testify in his own behalf had the district court ruled otherwise. We do not know whether

---

4. Our conclusion that Wilkins has not made a sufficient showing of prejudice in this case does not, of course, preclude him from attempting to make such a showing in a later collateral proceeding.

his testimony at trial would have been inconsistent with the statement he made to the FBI agents, and we do not know whether the state would have introduced the earlier statements into evidence.

Wilkins also raises the issue of the sufficiency of the evidence used to convict him. He advances two arguments. First, he contends that, because there was no evidence that he ever entered the bank, he cannot be convicted as a principal in the crime of bank robbery. Second, he alleges that the Government failed to establish that he was a knowing and willing participant as required by *United States v. Mariani*, 539 F.2d 915 (2d Cir. 1976).

■ Wilkins is mistaken in his first contention with respect to the substantive law. The getaway is part of the robbery; therefore, the driver of the getaway car is a principal in the crime of robbery and not a mere accomplice after the fact. *United States v. Willis*, 559 F.2d 443, 444 (5th Cir. 1977). Defendant, if he knowingly participated in the robbery as the getaway driver, is guilty as a principal.

■ With respect to whether Wilkins knowingly participated in the robbery as the getaway driver, "the verdict of the jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1943). We find that there was sufficient evidence on which the jury could have based its guilty verdict. Wilkins waited for his codefendants in the car outside the bank, then drove them from the scene of the crime. The stolen money was in a bag on the back seat and a gun was found on the front seat next to Wilkins. Police officers testified that Wilkins fired at them after the occupants of the car were ordered to come out. On the basis of this evidence, a jury could reasonably infer that Wilkins knowingly and intentionally participated in the robbery.

■ Wilkins's final contention is that his sentence was cruel and unusual in violation of the Eighth Amendment. Specifical-

ly, he contends that the trial judge failed to take into account his lack of a criminal record as well as his family, church, and community involvement. A trial judge, however, has wide discretion in sentencing and his exercise of that discretion will not be disturbed absent a showing of gross abuse. *United States v. Willard*, 445 F.2d 814, 815 (7th Cir. 1971). The weight to be given various factors is within the discretion of the sentencing court. *United States v. Main*, 598 F.2d 1086, 1094 (7th Cir. 1979). The trial judge in determining Wilkins's sentence apparently did consider mitigating factors. He received a fifteen-year sentence where the maximum was twenty-five years, plus a $10,000 fine. 18 U.S.C. § 2113(a), (d). Both of his codefendants received longer sentences. In addition, he was sentenced under 18 U.S.C. § 4205(b)(2), allowing him to be considered for parole immediately without serving the mandatory one-third of the sentence. Consequently, we find no abuse of discretion.

## III

Defendant Sam Gates contends that the prosecutor in his closing argument improperly drew attention to Gates's failure to testify, and thus compromised defendant's Fifth Amendment rights to such an extent that a fair trial was not possible. The statements at issue were made in the course of the prosecutor's argument about the role Gates played in the commission of the crime. The prosecutor first noted that Gates had been seen in the stolen "getaway" car, and asked rhetorically, "What is Sam Gates doing sitting in a car stolen [sic]? Do you have any innocent explanation for that?" Defense counsel did not object to the statement.

The prosecutor then noted that Gates was later caught in South Holland in the getaway car a short distance from an automobile registered to him. The prosecutor continued his argument by asking, "Why is [Gates's] car in South Holland? It is a switch car. That is the only explanation you have before you. Let the defense try to explain why Sam Gates is sitting in that

car." Defense counsel objected at that point. The district court overruled the objection, but then sustained an objection to the prosecutor's next statement, after having the reporter re-read the statement in the jury's presence: "See if Mr. Gates' attorney explains why his client was in that car."

This court has repeatedly admonished prosecutors to avoid even subtle references to a defendant's failure to testify, most recently reversing a conviction when a blatantly improper reference was made. *United States v. Rodriguez*, 627 F.2d 110 (7th Cir. 1980). *See United States v. Buege*, 578 F.2d 187 (7th Cir.), *cert. denied*, 439 U.S. 871, 99 S.Ct. 203, 58 L.Ed.2d 183 (1978); *United States v. Fearns*, 501 F.2d 486 (7th Cir. 1974). We have noted, however, that any potentially prejudicial comments must be considered in light of the entire record, with a view toward determining its probable effect on the jury. *Rodriguez*, 627 F.2d at 113. *See United States v. Muscarella*, 585 F.2d 242 (7th Cir. 1978).

■ In the instant case, we note at the outset that the prosecutor's first rhetorical statement as to whether the jury had any "innocent explanation" for Gates's presence in a stolen car was not improper. The jury was simply being asked to apply its common sense to the evidence that the prosecution had presented.

■ The other comments, though, have a different tenor. The prosecutor overstepped the bounds of propriety when he stated that the Government's theory of Gates's car as the switch car was the "only explanation" put before the jury, and that the defense should explain why Gates was found in the getaway car. The statements do *not* explicitly say that the defendant did not testify. Rather, they are much like those where the prosecution says that its theory is "uncontradicted" or "undisputed." *See Buege*, 578 F.2d at 188. They are unlike the *Rodriguez* variety of comment where a prosecutor says that a defendant

"has been very quiet" during the trial, explicitly drawing attention to the defendant's silence, *see Rodriguez*, 627 F.2d at 111, although, as in *Rodriguez*, the statements here were repeated and attention drawn to them by the district judge when he asked that they be re-read before sustaining defendant's objection to them.

We cannot say that the potential prejudicial effect of the prosecutor's comments requires reversal here. In his final instructions, the district judge made clear to the jury that the defendants had no duty to testify, and that the burden rested wholly with the Government. The district court directed the Government to proceed once the objection was sustained, thus minimizing the chance that the jury's attention would be further drawn to the comments, a danger apparently recognized by defense counsel, since they did not seek a cautionary instruction.

Moreover, the evidence of Gates's guilt is overwhelming; he was arrested in the getaway car a few blocks from the bank, and the stolen money and two guns were found inside the car. In *Rodriguez*, the strong evidence against the defendants was insufficient to overcome the clear prejudice to them from comments that blatantly pointed to their failure to testify. Here, by contrast, the comments were indirect. It is only because of the overwhelming evidence in the instant case and the indirect nature of the prosecutor's comments, however, that we conclude the improper comments were harmless beyond a reasonable doubt.[5]

Gates alleged that the trial court erroneously refused to admit his exhibits 4 and 6 into evidence. Both exhibits were lists of possible Government exhibits. Exhibit 4, which was sent to defense attorneys in November, 1979, failed to include two items, one of which was a lockpull. Exhibit 6, a supplementary list correcting this omission, was sent to defense attorneys about a week later. Defendant Gates contends that the

5. We note also that the trial in this case occurred prior to the decision in *Rodriguez*. Our conclusions might well be different if there

were any indication that the prosecutor was attempting deliberately to skirt the literal limits of *Rodriguez*, ignoring the spirit of that case.

existence of these two lists casts doubt on the testimony of an FBI agent that the lockpull was found in the trunk of the Cadillac.

At the time that Gates's attorney requested that the exhibits be admitted into evidence, the prosecutor explained that the omission of the lockpull from the list was a clerical error. The trial judge offered to conduct an evidentiary hearing outside the presence of the jury to determine whether the facts were as the prosecutor claimed, but defense counsel declined. The trial judge then ruled that the exhibits were irrelevant and therefore would not be admitted into evidence.

■■■ A trial court has broad discretion in determining the relevance of proffered evidence, and such rulings will not be reversed absent an abuse of discretion. *United States v. Lampson*, 627 F.2d 62, 65 (7th Cir. 1980) (per curiam). Applying this standard to the facts of the case at bar, we find no abuse of discretion.

■■■ Defendant Gates also challenges the sufficiency of the evidence. There was testimony that Gates was inside the bank with a gun, acting as a lookout. Gates was arrested in the car identified by witnesses as the one the robbers used to escape, which was stopped by police a few blocks from the bank. Police found a gun in the car by his feet and the bag containing the money next to him on the back seat. Viewing the evidence in the light most favorable to the Government, we find that there was substantial evidence to support the jury's verdict. *Glasser, supra*, 315 U.S. at 80, 62 S.Ct. at 469.

## IV

Defendant Morris Lewis contends that his confession should not have been admitted into evidence on the grounds that it was obtained as a result of an illegal arrest. His argument is that his arrest warrant was based on information supplied to police by Wilkins in his second interrogation and that if Wilkins's statement was involuntary then it cannot be the basis of probable cause.

Lewis's counsel made a motion to suppress his statement because the arrest warrant was allegedly issued without probable cause, but when the district court ruled that Wilkins's second statement was voluntary, defense counsel withdrew his motion to suppress. At trial, he did not object to agent Allison's testimony about the substance of Lewis's statement.

■■■ Even if we were to overturn the trial court's determination that Wilkins's second statement was voluntary, Lewis in withdrawing his motion to suppress waived any objection to the admission of the statement. *See United States v. Davis*, 527 F.2d 1110, 1111 (9th Cir. 1975), *cert. denied*, 425 U.S. 953, 96 S.Ct. 1729, 48 L.Ed.2d 196 (1976).

■■■ Lewis also asserts that the trial court erred in finding that his confession was voluntary. A reviewing court will accept the findings of fact of a trial court unless they are clearly erroneous. *United States v. Keefer*, 464 F.2d 1385, 1387 (7th Cir.), *cert. denied*, 409 U.S. 983, 93 S.Ct. 322, 34 L.Ed.2d 247 (1972). The defendant had signed a waiver of his rights before questioning began. He told the FBI agents that he wanted to talk to them. There was also testimony that at the time the nurse requested the FBI agents to leave, Lewis indicated that he wished to continue talking. Lewis emphasizes the fact that shortly before the interrogation, he was injected with two drugs. The charge nurse, however, testified that Lewis seemed able to understand her and follow directions. She further testified that her experience in the past was such that patients did not become groggy or unable to follow directions after receiving those drugs. On the basis of the foregoing facts, we find no abuse of discretion in Judge Leighton's finding that the confession was voluntary.

■■■ Defendant Lewis's final argument is that he was prejudiced by the remarks made by Gates's attorney during opening and closing arguments and cross-examination. During the arguments, Gates's attorney emphasized that the evidence as to his

client was different from the evidence as to the other defendants. Such an assertion insofar as it is a request to the jury to consider guilt or innocence on the basis of the evidence actually adduced against each defendant is not objectionable.

During the questioning of FBI agent Defenbaugh, Gates's attorney asked, "And the man running across the lawn was Mr. Lewis, is that right?" Defenbaugh replied, "I don't know." Lewis argues that in effect Gates was accusing Lewis via his attorney's comments, but Lewis had no opportunity to cross-examine his codefendant. Lewis cites *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), in support of his contention.

We are not convinced, however, that this question followed by the agent's reply of "I don't know" was incriminatory. Further, even if the question taken alone is incriminatory, we conclude that the error was harmless because the agent's answer made it highly unlikely that the question had any effect on the jury. *See United States v. Shepherd*, 576 F.2d 719, 723–24 (7th Cir.), *cert. denied*, 439 U.S. 852, 99 S.Ct. 158, 58 L.Ed.2d 155 (1978).

For the foregoing reasons, the convictions of Morris Lewis, Sam Gates, and Luther Wilkins are affirmed.