**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Charles Stanley JORDAN,**
**Defendant-Appellant.**

**Nos. 82–2690, 83–1145.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 13, 1983.

Decided Dec. 7, 1983.

As Amended Dec. 16, 1983.

Stephen J. Maassen, Hoagland, Maucker, Bernard & Almeter, Alton, Ill., for defendant-appellant.

David E. Risley, Asst. U.S. Atty., Danville, Ill., Gerald D. Fines, U.S. Atty., for plaintiff-appellee.

Before POSNER and FLAUM, Circuit Judges, and GRANT, Senior District Judge.*

GRANT, Senior District Judge.

Defendant-Appellant Charles Jordan appeals his conviction of aggravated battery, 18 U.S.C. § 13 (1976) and Ill.Ann.Stat. ch. 38, § 12–4(b)(6) (Smith-Hurd 1979), and of resisting a peace officer, 18 U.S.C. § 13 (1976) and Ill.Ann.Stat. ch. 38, § 31–1 (Smith-Hurd 1977). Jordan raises three issues on appeal:

1. Whether the prosecutor's references to "prior bad acts" denied Jordan a fair trial;

2. Whether the district court erred in refusing to instruct the jury on the defense of compulsion, and

3. Whether the evidence failed to prove beyond a reasonable doubt that appellant was guilty of aggravated battery or of resisting a peace officer?

## FACTS

On March 10, 1982, the Base Commander at Chanute Air Force Base barred defendant-appellant Jordan from the base because Jordan had threatened a base security policeman. On April 15, 1982, Jordan met with Base Commander Colonel Paul Roberson and discussed the lifting of the debarment order. At the conclusion of their meeting, Jordan stated: "I guess I will have to cripple people at the hospital." Colonel Roberson, suspecting a threat, asked Jordan to remain in the office and contacted the base security police. Jordan disregarded the Colonel's request, left the building, and began walking toward the main gate of the base.

Airman Beck and another security policeman approached Jordan as he walked along the sidewalk. Beck, wearing his uniform and security police badge, identified himself as a security policeman and told Jordan that he was being detained for communicating a threat. In response to a request for identification, Jordan produced a traffic ticket. Beck next asked Jordan to step up against the security police car, and Jordan complied. Beck conducted a simple frisk, and the other security policeman read Jordan his rights.

When Jordan turned around and took a package of cigarettes from his pocket, Beck told Jordan that he could not smoke because he was going to be transported. Jordan insisted on smoking and a struggle evolved as the security policemen attempted to handcuff him. Another struggle ensued as the policemen placed Jordan into their car.

The policemen transported Jordan to the base's dispatch office and placed him in a detention cell. Jordan was belligerent and violent. He refused to kneel so that the policemen could remove his handcuffs. Jordan resisted as the policemen attempted to force him onto his knees and, during the ensuing struggle, he reared off against the wall and kicked Airman Schultz, a base security policeman, on the knee. In all, four security policemen were necessary to restrain Jordan and to remove his handcuffs.

A jury found Jordan guilty of aggravated battery and resisting a peace officer. The district court sentenced Jordan to five years of imprisonment for aggravated battery and one year of imprisonment for resisting a peace officer, the sentences to run consecutively.

## I

*Whether the prosecutor's references to "prior bad acts" denied Jordan a fair trial?*

Jordan contends that the prosecutor's references to the incident which led to his debarment from Chanute Air Force Base, and the prosecutor's question about Jordan's prior arrest were improper and denied him a fair trial.

---

* The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, sitting by designation.

## A. *Indirect references to prior bad acts*

■ During the course of Jordan's trial, the prosecutor made several indirect statements concerning the act which had caused Jordan to be debarred from the Air Force Base.[1] The prosecutor couched these references in vague and unspecific terms. Jordan contends that the prosecutor's references to the act causing his debarment violated Fed.R.Evid. 404(b) and denied him a fair trial. This Court disagrees.

Fed.R.Evid. 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The rule does not exhaust the purposes for which evidence of other wrongs or acts may be admitted. "The draftsmen of Rule 404(b) intended it to be construed as one of 'inclusion,' and not 'exclusion.' They intended to emphasize the admissibility of 'other crime' evidence." *United States v. Long,* 574 F.2d 761, 766 (3d Cir.1978), *cert. denied,* 439 U.S. 985, 99 S.Ct. 577, 58 L.Ed.2d 657 (1978). "[T]he trial judge may exclude it [evidence of other acts] only on the basis of those considerations set forth in Rule 403, i.e. prejudice, confusion or waste of time." S.Rep. No. 1277, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Ad.News 7051, 7071. When one party offers evidence of prior bad acts and the opposing party objects:

[n]o mechanical solution is offered. The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof

and other facts appropriate for making decisions of this kind under Rule 403. Fed.R.Evid. 404(b), advisory committee notes.

When balancing prejudice and probative value, the courts of the various circuits have found the scale tipped in favor of admitting evidence of prior bad acts in cases where the acts involved, or explained, the circumstances of the crime charged, *Buatte v. United States,* 350 F.2d 389, 395 (9th Cir.1965), *cert. denied,* 385 U.S. 856, 87 S.Ct. 104, 17 L.Ed.2d 83 (1966); *United States v. Spatuzza,* 331 F.2d 214, 217 (7th Cir.1964), *cert. denied,* 379 U.S. 829, 85 S.Ct. 58, 13 L.Ed.2d 38 (1964), where the acts provided the background for, or development of, the crime charged, *United States v. Nadler,* 698 F.2d 995, 1000 (9th Cir.1983); *United States v. Magnano,* 543 F.2d 431, 435 (2d Cir.1976), *cert. denied,* 429 U.S. 1091, 97 S.Ct. 1101, 51 L.Ed.2d 536 (1977), and where the acts completed the story of the crime on trial, *United States v. Wilson,* 578 F.2d 67, 72 (5th Cir.1978); *United States v. D'Alora,* 585 F.2d 16, 20 (1st Cir.1978). When the evidence offered only implies a vague notion that the appellant was a party to other mischief, and when the evidence is offered for one of the purposes set forth in Fed.R. Evid. 404(b) or in similar instances, the testimony is not more prejudicial than probative. *See, e.g., United States v. Czarnecki,* 552 F.2d 698, 703 (6th Cir.1977), *cert. denied,* 431 U.S. 939, 97 S.Ct. 2652, 53 L.Ed.2d 257 (1977).

■ The present case arises from Jordan's presence on Chanute Air Force Base because of an earlier incident which led to his debarment. That earlier incident constituted part of the background and circumstance of the crime charged and completed

---

1. These indirect references were:

"... he had an appointment with the Commanding Officer, the Base Commander, Colonel Roberson, to meet with him and to try to justify his conduct approximately a month earlier." (Prosecutor's Opening Statement) (R. at 7.)

"He had been debarred because of an earlier incident." (R. at 8.)

"... [Jordan] asked to have an appointment with me to discuss the fact that I had on an

earlier occasion debarred him from entering the installation." (Direct examination of Colonel Roberson) (R. at 13.)

"I asked him [Jordan] if he could tell me what happened on that—during that prior incident, ..." *Id.*

"Back on March 10th of '82 at around 10:25 P.M.—" (Cross-examination of Jordan) (R. at 106.)

the story for the jury. The prosecutor made indirect references to this incident couched in vague and indirect terms.

In reviewing the admissibility of this evidence, this Court notes that "[t]he trial judge, who saw and heard the evidence firsthand, can best balance probity and prejudice, and the reviewing court may reverse only upon a showing of abuse of discretion." *United States v. Brown,* 688 F.2d 1112, 1117 (7th Cir.1982). Since the references were vague and indirect, and since the references supplied the background and surrounding circumstances of the crime charged, the district court properly denied Jordan's motion for a mistrial.

B. *Direct references to prior bad acts*

As part of its case-in-chief, the prosecutor called Colonel Roberson. On direct examination, the following colloquy took place:

Q What did you say and what did Mr. Jordan say?

A At that point I asked him if in fact he had communicated a threat to one of my security policemen which was—

(R. at 13.) Appellant objected to the reference to the prior incident and the district court sustained the objection as to why he was debarred. (R. at 13–14.) The questioning continued:

Q What did Mr. Jordan tell you?

A Well, he indicated to me ... that he had not made a statement that he was alleged to have made.

(R. at 14.) Appellant objected and moved for a mistrial. The district court sustained the objection but denied the motion for a mistrial.

■ Where evidence regarding prior bad acts is presented, the trial court has broad discretion in ruling on motions for mistrial. The trial court's striking of testimony, instructions to disregard and/or later jury instructions will avoid reversible error. *See United States v. Kahan & Lessin Co.,* 695 F.2d 1122, 1124–25 (9th Cir.1982); *United States v. Flemino,* 691 F.2d 1263, 1267 (8th Cir.1982); *Allen v. Snow,* 635 F.2d 12, 15 (1st Cir.1980), *cert. denied,* 451 U.S. 910, 101

S.Ct. 1981, 68 L.Ed.2d 299 (1981), and *United States v. Miroff,* 606 F.2d 777, 782 (7th Cir.1979), *cert. denied,* 445 U.S. 928, 100 S.Ct. 1315, 63 L.Ed.2d 761 (1980). Similarly, in cases where evidence regarding prior bad acts is presented, the presentation does not constitute reversible error when viewed against the entire record and overwhelming evidence of guilt. *See United States v. Bettencourt,* 614 F.2d 214, 218 (9th Cir. 1980); *United States v. Johnson,* 610 F.2d 194, 196 (4th Cir.1979), *cert. denied,* 446 U.S. 911, 100 S.Ct. 1840, 64 L.Ed.2d 264 (1980); *United States v. Fritz,* 580 F.2d 370, 376 (10th Cir.1978), *cert. denied,* 439 U.S. 947, 99 S.Ct. 340, 58 L.Ed.2d 338 (1978); *United States v. Miller,* 508 F.2d 444, 450 (7th Cir.1974).

■ In sustaining appellant's objection to Colonel Roberson's testimony regarding the prior incident, the district court warned, "It is sufficient that he was excluded from the Base, and he was there on this particular incident to discuss the matter. The circumstances of the prior occurrence are not relevant." (R. at 14.) When the prosecutor attempted to elicit information regarding the prior incident from Jordan, the district court sustained appellant's objection and denied his motion for mistrial. In so doing, the district court reminded all those who were present that:

[a]s to specific incidents, he [Jordan] is only on trial for resisting these particular military policemen and for the charge of aggravated battery.

\*　　\*　　\*　　\*　　\*　　\*

The jury understands it is only the charges against Mr. Jordan that he is being tried for, not for something else that happened.

(R. at 107.)

Considering the case as a whole, the district court's prompt cautionary instructions and the overwhelming evidence presented, the direct references to Jordan's prior bad acts, while improper under Fed.R.Evid. 404(b), did not constitute reversible error.

### C. Cross-examination regarding prior arrests

■ During the defendant's case-in-chief, defendant's counsel asked a character witness, Gerdes, whether he was "familiar with Mr. Jordan's reputation for being a peaceful and law-abiding citizen?" Gerdes replied that Jordan's reputation was "[v]ery good as far as I know." (R. at 82.) On cross-examination, the prosecutor asked Gerdes about a prior arrest of Jordan. Appellant contends that the district court erred in not granting him a mistrial when mention was made of his prior arrest.

While Fed.R.Evid. 404 generally prohibits the use of a person's character for evidence, the rule does allow "[e]vidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same." Fed.R.Evid. 404(a)(1). If a party places his character into evidence by testimony as to his reputation, "[o]n cross-examination, inquiry is allowable into relevant specific instances of conduct." Fed.R.Evid. 405(a).

> The price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit and to make himself vulnerable where the law otherwise shields him .... his own witness is subject to cross-examination as to the contents and extent of the hearsay on which he bases his conclusions, and he may be required to disclose rumors and reports that are current even if they do not affect his own conclusion.

*Michelson v. United States,* 335 U.S. 469, 479, 69 S.Ct. 213, 220, 93 L.Ed. 168 (1948).

When the prosecutor questioned Gerdes about his knowledge of Jordan's prior arrests, the district court properly denied Jordan's motion for mistrial because Jordan "had 'opened the door' to this line of inquiry by putting in issue appellant's [Jordan's] reputation for the traits of ... [peaceful] and law-abiding citizenship." *United States v. Payne,* 635 F.2d 643, 647 (7th Cir.1980), *cert. denied,* 451 U.S. 972, 101 S.Ct. 2050, 68 L.Ed.2d 351 (1981).

### D. Conclusion

Jordan relies on *United States v. Shelton,* 628 F.2d 54 (D.C.Cir.1980) as authority for his contention that the references to prior bad acts require a new trial. In *Shelton,* the prosecutor, by innuendo, portrayed the criminal defendants as "seedy and sinister characters," members of the drug underworld involved in all sorts of skullduggery. *Id.* at 56–57. Jordan fails to show that the prosecutor, intentionally and through innuendo, portrayed Jordan as an undesirable and a person likely to commit a battery or to resist a police officer. The record reflects scattered and unintentional references to Jordan's prior bad acts, careful balancing by the district court when objections and motions for mistrial were made to these references, and a number of cautionary statements regarding the references. In light of the record, this Court finds these references to be, at most, harmless error.

## II

### Whether the district court erred in refusing to instruct the jury on the defense of compulsion?

■ Jordan argues that the district court erred in failing to instruct the jury on the defense of compulsion. Since Jordan had restricted his request for a jury instruction on the affirmative defense of compulsion to the charge of resisting a police officer, we limit our review to that count.

Ill.Ann.Stat. ch. 38, § 7–11(a) (Smith-Hurd 1972) supplies the basis for an instruction on the compulsion defense:

> A person is not guilty of an offense, other than an offense punishable with death by reason of conduct which he performs under the compulsion of threat or menace of the imminent infliction of death or great bodily harm, if he reasonably believes death or great bodily harm will be inflicted upon him if he does not perform such conduct.

Jordan properly cites *People v. Unger,* 33 Ill.App.3d 770, 338 N.E.2d 442 (1975) to show that only "very slight evidence," is necessary to entitle a defendant to an in-

struction on an affirmative defense such as compulsion. *Id.* at 772, 338 N.E.2d at 444. The Illinois Supreme Court, in reviewing *Unger,* set forth what kind of evidence must exist:

> ... the defense of compulsion generally requires an impending, imminent threat of great bodily harm *together with a demand that the person perform the specific criminal act for which he is eventually charged* (citations omitted). Additionally, where the defense of compulsion is successfully asserted the coercing party is guilty of the crime.

66 Ill.2d 333, 339–40, 5 Ill.Dec. 848, 851, 362 N.E.2d 319, 322 (1977) (emphasis added).

In Jordan's case, nothing exists in the records as a basis for fear of immediate, serious physical harm or injury from the base security policemen. The officers wore uniforms and Jordan recognized them as policemen. Additionally, Jordan does not contend that the policemen demanded that he commit the crime with which he was charged, that is, resisting arrest. Therefore, the court correctly refused to instruct the jury on the defense of compulsion.

### III

*Whether the evidence failed to prove, beyond a reasonable doubt, that appellant was guilty of aggravated battery or of resisting a peace officer?*

Jordan contends that the evidence failed to prove him guilty of aggravated battery or resisting a peace officer beyond a reasonable doubt.

 This Court notes that: "[I]n deciding whether the evidence was sufficient to allow the jury to find defendant guilty beyond a reasonable doubt, [this Court] must view conflicting evidence and inferences reasonably drawn from the record in the light most favorable to the government." *United States v. Henderson,* 645 F.2d 569, 572 (7th Cir.1981), *cert. denied,* 454 U.S. 850, 102 S.Ct. 289, 70 L.Ed.2d 139 (1981). In so doing, the Court must keep in mind the jury's right to determine the credibility of witnesses. *United States v. Washington,* 586 F.2d 1147, 1152 (7th Cir.1978). The verdict of the jury must be sustained if there is "substantial evidence" to support it. *United States v. Wilkins,* 659 F.2d 769, 773 (7th Cir.1981), *cert. denied,* 454 U.S. 1102, 102 S.Ct. 681, 70 L.Ed.2d 646 (1981), citing *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1943).

 Ill.Ann.Stat. ch. 38, § 12–3 (Smith-Hurd 1979) states that "[a] person commits a battery if he intentionally or knowingly without legal justification and by any means, ... (2) makes physical contact of an insulting or provoking nature with an individual." When the person committing the battery "[k]nows the individual harmed to be a peace officer, ... while such officer is engaged in the execution of any of his official duties ...," that person commits aggravated battery. *Id.* at § 12–4(b)(6). A person resists a police officer when he "knowingly resists or obstructs the performance by one known to the person to be a peace officer of any authorized act within his official capacity...." *Id.* at § 31–1 (1977).

The testimony of the airmen indicated that Jordan deliberately kicked back and struck Airman Schultz on the knee and that Jordan resisted Airman Beck when the airman was taking him into custody. As such, the jury received substantial evidence from which it could find Jordan guilty on both counts.

### IV

WE AFFIRM the decision of the district court. Although the sentence imposed seems severe, we note that a procedure exists under Fed.R.Crim.P. 35 whereby Jordan may file a motion for reconsideration of his sentence, and we are satisfied that the district court will, upon review, give it careful consideration.

AFFIRMED.