**UNITED STATES of America, Plaintiff-Appellee,**

v.

**William BORONI, Defendant-Appellant.**

**No. 84–1925.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 5, 1984.

Decided April 3, 1985.

---

Jeffrey Kaufman, Gimbel, Gimbel & Reilly, Milwaukee, Wis., for defendant-appellant.

Nathan A. Fishbach, Asst. U.S. Atty., Joseph Stadtmueller, U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before BAUER and FLAUM, Circuit Judges, and GRANT, Senior District Judge.*

GRANT, Senior District Judge.

Defendant-Appellant, Boroni, appeals his jury conviction for conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and 18 U.S.C. § 2, and for the unlawful use of a communications facility, a telephone, in order to facilitate the distribution of cocaine in violation of 21 U.S.C. § 843(b). Boroni asks this Court to reverse the district court's denial of his request for a mistrial based upon the unduly prejudicial nature of testimony admitted against him. For the reasons set forth below, this Court reverses the jury's decision, vacates the district court's sentence and remands this case for a new trial.

### Facts

On December 31, 1982, William Boroni, his friend, Steven Melka, and their dates went to Boroni's bar in Lake Geneva, Wisconsin to celebrate New Year's Eve. Ronald Steiskal joined the group at the bar. In a private conversation with Steiskal, Melka agreed to get some cocaine for a "buyer" Steiskal knew. Steiskal agreed to contact Boroni when his buyer was ready; Boroni would then contact Melka, who lived in Downer's Grove, Illinois.

On January 2, 1983, Boroni telephoned Melka and told him that Steiskal wanted to see him. Boroni then told Steiskal to meet Melka in Boroni's bar the next day.

On January 3, 1983, Melka and Steiskal met in Boroni's bar. Melka gave Steiskal four ounces of cocaine. That evening Steiskal met with his buyer, June Halverson, to make the cocaine sale. Special

---

* Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, sitting by designation.

Agents with the Wisconsin Department of Justice, Division of Criminal Investigation, posing as buyers, arrested Halverson and Steiskal after Steiskal transferred the cocaine to Halverson.

On October 11, 1983, a grand jury indicted Boroni for his part in the cocaine sale. The three-count indictment alleged: 1) conspiracy to distribute, dispense, possess with intent to distribute and dispense cocaine, and to knowingly aid and abet, induce and procure the distribution, dispensation, and possession with intent to distribute four ounces of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and 18 U.S.C. § 2; 2) possession with intent to distribute cocaine, and aiding and abetting the possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and, 3) unlawful use of a telephone in order to commit a felony by causing and facilitating the distribution of four ounces of cocaine, in violation of 21 U.S.C. § 843(b).

The Government has tried this case twice. The first trial resulted in a hung jury. Steiskal testified at both trials after the Government agreed not to prosecute him for a number of criminal acts he had committed.

At a conference before opening statement in the second trial, the district court ruled that evidence of several of Steiskal's previous criminal acts would be admissible to make the jury aware of Steiskal's immunity agreement. Steiskal's previous criminal acts included an alleged cash register skimming scheme with Boroni, which had been excluded from evidence in the first trial. (Record at 20). The district court reserved judgment on whether evidence of Boroni's alleged involvement with Steiskal in the cash register skimming scheme was admissible. (Record at 23).

During Steiskal's testimony, and over the objection of Boroni's counsel, Steiskal implicated Boroni in the alleged cash register skimming scheme. Boroni moved for a mistrial based upon the unduly prejudicial nature of the testimony. The trial court found the testimony to be probative of Steiskal's motive for testifying and did not find sufficient prejudice to require a mistrial. (Record at 88). Instead, the trial court instructed the jury to disregard Steiskal's accusation. (Record at 90).

The jury convicted Boroni on Counts 1 and 3 of the indictment. The trial court entered judgment on the verdict and sentenced Boroni on Count 1 to six months in prison with work release, and to three years probation to commence upon release from prison and a $4,000 fine on Count 3.

Boroni presents one issue on appeal: whether the district court erred in denying him a mistrial after the admission of Steiskal's testimony implicating Boroni in the cash register skimming scheme?

■ Federal Rule of Evidence 404(b) permits a trial court to admit evidence of a defendant's prior criminal acts to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed.R.Evid. 404(b). Rule 404(b) prohibits the use of evidence of prior criminal acts to prove "the character of a person in order to show he acted in conformity therewith." Fed.R. Evid. 404(b). Rule 404(b) does not exhaust the purposes for which evidence of other wrongs or acts may be admitted. *United States v. Jordan*, 722 F.2d 353, 356 (7th Cir.1983).

■ A court may admit evidence of a prior criminal act to establish a matter in issue other than propensity to commit the crime charged if: 1) the prior act is similar and close in time to the offense charged; 2) evidence of the prior act is clear and convincing; and 3) the probative value outweighs the danger of unfair prejudice. *United States v. Shackleford*, 738 F.2d 776, 779 (7th Cir.1984).

■ The Government did not offer Steiskal's testimony regarding Boroni's alleged involvement in the cash register skimming scheme for any of the purposes listed in Rule 404(b). The trial court admitted the testimony to show Steiskal's credibility and motive for testifying. However, Steiskal's

testimony met none of the *Shackleford* standards. The alleged cash register skimming scheme differs greatly from the cocaine sale. The Government offered no evidence to show that the alleged scheme occurred near the time of the cocaine sale. Steiskal's uncorroborated and vague allegation falls short of the clear and convincing evidentiary standard. The determination whether the probative value of evidence outweighs the risk of prejudice is left to the discretion of the trial court. *United States v. Wormick,* 709 F.2d 454, 459 (7th Cir.1983). Under these circumstances, we find that the trial court abused its discretion by admitting Steiskal's testimony regarding the alleged cash register skimming scheme.

■ The trial court has broad discretion to rule on motions for mistrial when evidence of prior bad acts is admitted. *United States v. Jordan,* 722 F.2d at 357. Whether the admission of such evidence is harmless or reversible error depends upon the context of the individual case. *United States v. Ledesma,* 632 F.2d 670, 674 (7th Cir.), *cert. denied,* 449 U.S. 998, 101 S.Ct. 539, 66 L.Ed.2d 296 (1980). A trial court's instructions to disregard erroneously admitted evidence of prior bad acts will normally avoid reversible error. *United States v. Jordan,* 722 F.2d at 357. An instruction will not always cure the damage caused by erroneously admitted evidence. A reviewing court must determine with fair assurance whether, in spite of the instruction, the verdict was substantially swayed by the error. *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946); *United States v. Shackleford,* 738 F.2d at 783. A conviction that has been substantially swayed by erroneously admitted evidence of prior bad acts must be reversed. *Kotteakos v. United States,* 328 U.S. at 765, 66 S.Ct. at 1248.

■ In light of all the evidence in this case, this court concludes that the improper admission of Steiskal's allegations substantially swayed the jury's verdict. Boroni's first trial, without Steiskal's allegation, resulted in a hung jury. At the second trial, and even with the highly prejudicial allegations, the jury acquitted Boroni on one of the three counts in the indictment. This suggests that the jury was swayed by Steiskal's allegation. This Court has grave doubts as to whether Boroni would have been convicted on the other two counts without the improper admission of Steiskal's prejudicial allegation.

Finally, because the evidence against Boroni consists solely of testimony from his immunized co-conspirators, the record does not show overwhelming evidence of guilt that would preclude reversal. *United States v. Jordan,* 722 F.2d at 357. Boroni testified that he did not know that Melka and Steiskal met on New Year's Eve (Record at 350); that he telephoned Melka to ask him to bring some personal items from Downer's Grove, Illinois to Lake Geneva (Record at 356); that in the telephone conversation, he conveyed Steiskal's request to see Melka (Record at 356); that he did not know why Steiskal wanted to see Melka (Record at 354); and that he suspected Steiskal and Melka of dealing in drugs. (Record at 393).

Steiskal and Melka testified under plea agreements. Both testified that Boroni knowingly arranged the cocaine deal. (Record at 65, 69, 215). Both testified that Boroni saw the cocaine before and after its transfer from Melka to Steiskal. (Record at 98, 222). Steiskal testified that Boroni stood guard in the hall while Melka gave Steiskal the cocaine in the beer room of Boroni's bar. (Record at 69, 164). Melka testified that he gave Steiskal the cocaine in a bathroom, and that Boroni was not involved in the actual transfer except insofar as he was on the same premises. (Record at 224, 263, 274). Melka testified that Boroni received no compensation for the deal. (Record at 275).

This Court finds the evidence against Boroni to be inconsistent, sketchy and unreliable. Because this Court does not find overwhelming evidence of Boroni's guilt, it reverses his conviction based on the admission of Steiskal's allegation.

This Court REVERSES the jury's decision, VACATES the trial court's sentence and REMANDS this case for a new trial.

BAUER, Circuit Judge, dissenting.

I respectfully dissent. It seems to me that when the prosecution moves to keep out evidence of crime committed by a witness and the defendant prevails upon the trial judge to permit such evidence to be presented to the jury, then the defendant is not in a logical or legal posture to complain that the facts of the crime presented includes evidence of bad conduct by the defendant.

The theory of the presentation of such evidence is an attack on the credibility of the witness. The fact that the witness has committed a crime and has been promised immunity or leniency by the government in return for his testimony is obviously proper for jury consideration in assessing the witness's credibility. Nevertheless, the facts of the crime, once the evidence has been deemed admissible, are also of probative value in determining what the witness "received" for his testimony. And here the defendant has to make a decision: to take the position of this defendant and insist on the introduction of the "other crime" evidence, or forego that right and pleasure and keep his own name out of "other crime" evidence. I do not consider that telling the whole truth—as opposed to that portion of the truth that the defendant wants the jury to hear—can be reversible error when it is the defendant who seeks the introduction of the matter in the first place. Moreover, assuming the jurors were able to follow the court's instructions in other respects, I have no question about their ability to follow the cautionary instruction in this case as to the consideration to be given this particular piece of evidence.

And finally, while admitting the vast experience of my Brother Grant in trial matters, to say that a jury was "swayed by" a particular piece of evidence is too far reaching for me. To further suggest that "this court has grave doubts as to whether Boroni would have been convicted [without the evidence complained of]" is a statement from which I wish to clearly disassociate myself. If I entertain grave doubts on what a jury might or might not do with a particular set of facts or on presentation of particular pieces of evidence, I try not to let the fact show—and never would I articulate such a doubt. I would affirm.