Fernando Luis **RODRIGUEZ-SANDO-VAL**, Defendant-Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

**No. 7113.**

United States Court of Appeals
First Circuit.

April 15, 1969.

Arturo Estrella, San Juan, Puerto Rico, by appointment of the Court, with whom Vicente Zayas Puig, San Juan, Puerto Rico, was on the brief, for appellant.

J. Thomas Carroll, Jr., Atty., Dept. of Justice, with whom Francisco A. Gil, Jr., U. S. Atty., was on the brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

In this appeal we are primarily concerned with whether the prosecutor's statements to the jury that the government's evidence is uncontradicted violated the defendant's constitutional right not to take the stand in his own behalf.

A jury convicted the defendant on six counts of narcotics violations, three counts arising out of each of two distinct but similar episodes. Concurrent ten year sentences resulted. At the trial Internal Revenue Agent Cartegena testified that on December 21, 1966, he went to the defendant's residence with a spe-

cial employee of Internal Revenue [1] and while there saw the special employee give the defendant some money in exchange for a package that contained narcotics. Agent Cartegena also testified that in substance the same thing occurred again on December 26, 1966.[2] An attorney named Cangiano testified that the defendant had been in court with him during the pertinent hours of December 21. This alibi was the only defense presented.

In its summation to the jury the prosecution commented entensively on the fact that the government's evidence as to the December 26 sale was uncontradicted. After reviewing the evidence on the December 21 sale the prosecutor commented that with reference to that transaction "a controversy had been raised, but not on December 26." Then he continued in pertinent part as follows:

> "This does not mean that because the defendant did not present any evidence on December 26 that you will find the defendant guilty for that simple reason. * * * But if you find that the Government has proved its case beyond a reasonable doubt on December 26, and I see no reason why you should not make that determination *because the evidence is uncontradicted in that transaction,* the defendant does not have to present evidence on his behalf. He does not even have to take the witness stand, and the fact that he does not take the witness stand you should not take into consideration against him, and should make no inference against him, *because he did not take the witness stand,* but the issues are simple on December 26.
>
> "*There is no contradiction.* There is the testimony of a competent, reliable witness, a Government employee, testifying that on December 26, 1966, around 12:30 he saw the defendant making a transaction with the special employee Rafael Alfonso Diaz.
>
> "*There is no evidence to the contrary. No evidence.* Now, as I said before, that does not mean you can find the defendant guilty for the simple reason that *that fact apparently is not controverted, that there is no evidence to the contrary.* You must find * * * that the Government has proved its case on that particular transaction beyond a reasonable doubt, *but you have to take into consideration that his* [agent Cartagena's] *testimony has not been contradicted. That's very important in determining whether he was telling the truth or not. * * *"* (Italics ours)

The defendant did not take exception to any of these remarks nor did the court admonish the prosecutor when they were made. No request to charge was submitted on this issue and the court gave only a vague instruction.[3]

The government contends that this extended harangue should be understood not as a comment on the failure of the defendant to testify but merely as a contrast between the December 21 transaction (for which there was an alibi witness and hence a controversy for the jury) and the December 26 transaction (for which no alibi witness was presented); further, that since there was no objection below, defendant must show plain error; and finally that any error applies only to the final three counts and since the sentences were concurrent no prejudice results.

While it is true that parts of the offending portion of the summation could

---

1. This special employee, an addict who was himself under indictment for narcotics violations, did not testify but the government paid him for his services.

2. It was stipulated that the packages contained narcotics and further that the defendant "was not authorized to deal with narcotic drugs."

3. "A defendant is not required to testify in a criminal case and no presumption of guilt is raised and no inference of any kind may be drawn from the failure of a defendant to testify."

have the meaning that the government contends for, we see no innocuous interpretation which could reasonably be made of the concluding part of the argument where the prosecutor said:

> "You must find * * * that the Government has proved its case on that particular transaction beyond a reasonable doubt, but you have to take into consideration that his [agent Cartegena's] testimony has not been contradicted. That is very important in determining whether he was telling the truth or not * * *."

This particular passage cannot be understood as pointing only to the absence of an alibi witness. There is nothing to indicate that there was an alibi witness as to these counts who could have contradicted the agent. There was only one witness who the jury knew was in a position to contradict him—the defendant. But he had the right not to testify, to put the government to its proof, and not to have the fact of his muteness be used as an argument to support the credibility of the government's witness.

We have repeatedly held that such comment, even by implication, is improper. See Holden v. United States, 393 F.2d 276 (1st Cir. 1968); Holden v. United States, 388 F.2d 240 (1st Cir. 1968), cert. denied, 393 U.S. 864, 89 S.Ct. 146, 21 L.Ed.2d 132; Kitchell v. United States, 354 F.2d 715 (1st Cir. 1965), cert. denied 384 U.S. 1011, 86 S.Ct. 1970, 16 L.Ed.2d 1032 (1966); Desmond v. United States, 345 F.2d 225 (1st Cir. 1965). A different case might be presented if it were clear from the record that there was someone other than himself whom the defendant might call as a witness. See *Desmond, supra,* at 227.[4] But this is not such a case. As noted, the availability of an alibi witness for one occasion in no way implies the availability of an alibi witness for a different occasion. We think there was plain error here within the meaning of Fed.R.Crim.P. 52(b).

Defendant's constitutional right not to testify was infringed. To begin with, although there was a certain subtlety to the prosecution's remarks, the error was extremely aggravated from the quantitative standpoint. The prosecution hammered the point home relentlessly, stating in at least five different ways that its version of the December 26 happenings was uncontradicted. See Chapman v. California, 386 U.S. 18, 26, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Compare United States v. Goitia, 409 F.2d 524, decided by this court today; also see Holden v. United States, 393 F.2d at 277. In such a case we are unwilling to allow the government to act improperly and then avoid reversal by the unprovable assertion that grievous prejudice probably did not result.

Indeed, the very persistence of the government in making these remarks is proof that it attached much importance to them. We do not say that the government was contumacious. It doubtless believed that its remarks were at least arguably consistent with our decisions. But one who attempts to define exactly the edge of the precipice approaches at his peril.

Construing these remarks as an indirect comment on the defendant's failure to testify, we are unable to say that their effect was restricted to Counts 4–6 (December 26). Therefore, the usual rule that where concurrent sentences are imposed only one valid count is needed to sustain the conviction has no application in the circumstances of this case. See Saville v. United States, 400 F.2d 397, 399 (1st Cir. 1968).

Defendant also complains because he was sentenced to be committed to the custody of the Attorney General who shall designate the place of his confinement. Specifically he contends that the sentencing statute, 18 U.S.C. § 4082, gives the Attorney General an absolute and arbitrary right to determine the place of

---

4. But see United States v. Poole, 379 F.2d 645, 649 (7th Cir. 1967) where a stricter rule is suggested.

incarceration; further, that the custom of sending convicts from Puerto Rico to Atlanta amounts to expatriation and therefore cruel and unusual punishment. While these assertions are not documented by pertinent citations and while the point is now moot as to this defendant, we discuss the matter briefly because of its general importance.

■ Contrary to defendant's contention the discretion of the Attorney General under the statute, although commodious, is not unbridled. The place of confinement must be "suitable and appropriate" and a determination by the Attorney General in an extreme case could be found to be arbitrary and capricious. See Lawrence v. Willingham, 373 F.2d 731 (10th Cir. 1967). This is surely not such a case. A decision to send prisoners to Atlanta—the nearest federal penal institution available for prisoners in defendant's classification— was made only after a determination that, among other things, the insular penitentiary was unsuitable because of overcrowding. Obviously, prisoners do not have a right to select their place of confinement.

■ Finally, while it may be acknowledged that certain special hardships, e. g., language difficulties may attach in these circumstances, there is surely no question of cruel and unusual punishment. Defendant speaks of expatriation. But expatriation "is the voluntary renunciation or abandonment of nationality and allegiance." Perkins v. Elg, 307 U.S. 325, 334, 59 S.Ct. 884, 889, 83 L.Ed. 1320 (1939). Moreover, we are not here concerned with involuntary denationalization. Thus, the discussion in Trop v. Dulles, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed. 2d 630 (1958) on which defendant relies, is not controlling, as he acknowledges, and is not in our opinion a fruitful source of analogy.

The judgment of the district court is reversed and the case remanded to that court for a new trial.