IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 91-8434

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRANK IVY,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

( September 17, 1992)

Before REAVLEY, HIGGINBOTHAM, and DUHÉ, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Frank Ivy appeals his convictions for conspiracy to possess cocaine with intent to distribute, possession with intent to distribute, and using a firearm during or in relation to a drug crime.  We affirm.

I.

Ivy and his co-conspirator, John Guillory, were caught in a reverse-sting operation of the Austin Police Department and DEA. Officer Varela of the APD, posed as a cocaine supplier advising that he could supply quantities of cocaine to anyone who was interested.

On March 26, 1990, Guillory called Varela's undercover phone number and told him that he was looking for a kilogram of cocaine.

They negotiated a price of $20,000, and Guillory informed Varela that another person would be involved. The two agreed to meet at Luby's Cafeteria in Austin.

The next day, Varela and Undercover Officer Marquez met Guillory at Luby's where they were soon joined by Ivy. Ivy and Varela then negotiated price. Ivy disputes much of the rest of the conversation, but admits that a cocaine transaction was arranged. The government asserts that during this discussion Ivy described three residences; Ivy intended to take the officers to one of these locations to see the money he would use to purchase the cocaine.

Ivy was to bring the money to purchase the cocaine to the Red Lion Inn. Ivy arrived carrying a briefcase containing $20,000 in cash. Officer Marquez then brought the cocaine over in a blue gym bag. Ivy took the bag, opened it, and began to unwrap the cocaine for testing. The arrest team then entered the hotel room, arrested Ivy, and seized evidence in the hotel room. Ivy disputes the testimony of Officer Young that his briefcase was opened when she seized its contents. The briefcase contained a loaded .38 caliber revolver wrapped in a clear plastic baggie, plastic bags, a cocaine test kit, and slips of paper with the designation "2K."

After the arrest, DEA Agent Hildreth obtained search warrants for the three residences Ivy had described in the Luby's meeting. At one address, the officers found marijuana, currency wrapped and tagged in the same way as that found in Ivy's briefcase, with scales, drug tally sheets, cocaine tester kits, and weapons. At another address, the agents found urinalysis kits and a receipt to

a storage locker rented by Ivy. Based on the receipt, Hildreth received a search warrant for the storage locker, which contained $42,000 in currency also wrapped and tagged in the same manner as the money seized earlier from the briefcase.

There were several problems with the searches and evidence. Apparently, in the affidavit used to obtain the search warrant for the storage facility, Agent Hildreth stated inaccurately that the receipt was seized in a search of Ivy when he was arrested. There was also some confusion about the source of information used to obtain the original warrants; the affidavits refer to a "cooperating defendant" when it was in fact a "cooperating individual," an informant, who supplied information.

The gun seized from Ivy's briefcase was test-fired by two agents and found to be in working order. Unfortunately, the gun and all the other evidence seized in the case was accidentally destroyed before Ivy's trial. Ivy testified in his own behalf at trial and admitted to almost all the facts, including the fact that he agreed to buy cocaine from Officer Varela and was opening the bag of cocaine when arrested.

Ivy was tried and found guilty of conspiracy to possess over 500 grams of cocaine with the intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846, possession of over 500 grams with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and use of a firearm during or in relation to a drug crime in violation of 18 U.S.C. § 924(c). Ivy was sentenced to a total of 175 months in prison, a four-year term of supervised release, and a fine of $150.

II.

Ivy argues that the district court improperly denied his motion to suppress the evidence seized during his arrest and the evidence seized pursuant to the search warrants. As to the evidence seized at arrest, Ivy argues that the search of his briefcase was improper, because it was actually closed at the time of arrest. First, the district court was entitled to credit the testimony of the officers that the briefcase was wide open when they made the arrest. If the briefcase was open, then the seizure of the gun, cocaine test kit, and slips of paper found inside was valid under the "plain view" doctrine. Horton v. California, 110 S. Ct. 2301 (1990); Coolidge v. New Hampshire, 403 U.S. 443 (1971). Second, even if we accept Ivy's description of the circumstances, the search of a closed briefcase within the defendant's reach incident to an arrest is also valid. United States v. Johnson, 846 F.2d 279 (5th Cir. 1988); United States v. Herrera, 810 F.2d 989 (10th Cir. 1987).

As to the evidence seized pursuant to the four search warrants, Ivy presents a number of arguments. First, he attacks the warrant to search the storage facility on the grounds that the supporting affidavit contained the inaccurate statement that the receipt for the storage facility was found on Ivy when he was arrested. To suppress evidence from a search on the basis that the affidavit used to obtain the warrant is false, the defendant must show that the affiant made the statement with deliberate falsity or with reckless disregard for the truth. Franks v. Delaware, 438

4

U.S. 154 (1978); United States v. Wake, 948 F.2d 1422, 1428 (5th Cir. 1991). The district court held a pretrial hearing on this question and determined that Agent Hildreth had no reason to believe the statement was false. That finding was not clearly erroneous.

Second, Ivy argues that the reference to a "cooperating defendant" instead of a "cooperating individual" in the affidavit for the other three warrants was false and warranted suppression of the evidence seized from his three residences. Again, there is no evidence that this falsity was deliberate or made with a reckless disregard for its truth. Finally, if probable cause remains after the alleged false statement is excised, the search is still valid. It does. Franks, 438 U.S. at 171-72. In her affidavit, Agent Hildreth swore that Ivy identified three residences at which he had transacted business relating to his drug trafficking.

### III.

Ivy next asserts that there was insufficient evidence to support his convictions. In evaluating the sufficiency of the evidence, we consider the evidence in the light most favorable to the government with all reasonable inferences and credibility choices made in support of the verdict. Glasser v. United States, 315 U.S. 60, 80 (1942). With regard to the drug conspiracy conviction, the government must prove beyond a reasonable doubt an agreement between two or more persons to violate the narcotics laws and that each conspirator knew about, intended to join, and participated in the conspiracy. United States v. Ruiz, 860 F.2d

5

615, 617-18 (5th Cir. 1988). Ivy argues that Guillory was not involved in the conspiracy, thereby leaving him no non-government agent with whom to conspire. The record, however, reflects sufficient evidence of Guillory's participation. Guillory set up the meeting with Varela, knowing that the purpose was to arrange a drug transaction. In addition, Ivy admitted that he intended to pay Guillory for the introduction. A reasonable jury could infer a conspiracy from this evidence.

As to his conviction for possession with intent to distribute, Ivy asserts that he never possessed the cocaine, because he had not had a chance to test the drugs to determine if he wanted to accept them. Section 841(a)(1) requires the government to prove either actual or constructive possession. United States v. Randall, 887 F.2d 1262, 1268 (5th Cir. 1989). "Actual possession is defined as knowingly having direct physical control over a thing at a given time." Id. After arriving at the Red Lion, Ivy handed over $20,000 in cash for the cocaine. Moreover, Ivy admitted on the stand that he took the package and began to open it before his arrest. These facts provide sufficient evidence for a reasonable jury to conclude that Ivy had actual possession of the cocaine. Proof of Ivy's intent to distribute may be established by direct or circumstantial evidence. United States v. Dreyfus-de Campos, 698 F.2d 227, 229 (5th Cir. 1983). The quantity of cocaine involved here, considered alone, was sufficient to support the inference that he possessed the cocaine with intent to distribute. See United States v. Vergara, 687 F.2d 57, 62 (5th Cir. 1982). There

6

was additional evidence from which the jury could reasonably infer Ivy's intent to distribute. He admitted to Officer Varela that he wished to buy additional quantities of cocaine, he admitted to the jury that he was a "street hustler" open to drug deals because he was in it for the money, and officers found currency wrapped and tagged along with scales in one of his residences. See United States v. Munoz, 957 F.2d 171, 174 (5th Cir. 1992) ("Proof of intent to distribute may be inferred from the presence of distribution paraphernalia, large quantities of cash, or the value and quality of the substance"). This evidence is sufficient.

Ivy also challenges his conviction for use of a firearm during or in relation to a drug crime under 18 U.S.C. § 924(c). The government must prove that Ivy used or carried a firearm during and in relation to a drug trafficking crime. United States v. Raborn, 872 F.2d 589, 595 (5th Cir. 1989). We have interpreted section 924(c) broadly. Conviction of this offense "does not depend on proof that the defendant had actual possession of the weapon or used it in any affirmative manner." Id. It requires "evidence that the firearm was available to provide protection to the defendant in connection with his engagement in drug trafficking." Id. (citations omitted). The gun in this case was clearly being "used" in the sense of being available to provide protection during Ivy's drug trafficking activities.[1]

---

[1]Ivy also objects to Agent Hildreth's testimony concerning Hildreth's experience with drug dealers who wrap their weapons in the way Ivy's was wrapped when the officers found it in his briefcase. This testimony appears to be proper use of a trained officer for expert testimony. See F.R.E. 701, 702. Moreover,

Ivy moved before trial for the return of the approximately $75,000 in cash seized from him. Pursuant to <u>United States v. Monsanto</u>, 924 F.2d 1186 (2d Cir. 1991) (en banc), the district court referred the matter to a magistrate to conduct a hearing to determine probable cause as to both the commission of a narcotics offense and the forfeitability of the specified property. The Magistrate found probable cause and we find no basis for upsetting that finding. Ivy had thousands of dollars in cash stored and packaged in exactly the same way, $20,000 of which he handed over to pay for cocaine at the Red Lion. He had no legitimate employment and admitted that he had sold cocaine for years. The $42,000 seized from the warehouse was just over the amount Ivy would have needed to complete the next phase of the drug deal he had discussed with the undercover agent, the purchase of two more kilograms of cocaine. These facts support the finding of probable cause as to the crime and forfeitability. Finally, any claim by Ivy that forfeiture of his funds violated his Sixth Amendment right to use those funds to obtain counsel of his choice is foreclosed by the Supreme Court's decision in <u>Caplin & Drysdale, Charted v. United States</u>, 109 S. Ct. 2646 (1989).

V.

Ivy's final three assertions of error warrant only brief mention. First, he argues that the government's reverse-sting

---

even if the admission of this testimony was error, we find it to be harmless.

operation constituted outrageous government misconduct and thus violated his constitutional right to due process, a defense available in only "the rarest and most outrageous circumstances." United States v. Stanley, 765 F.2d 1224, 1231 (5th Cir. 1985). Those circumstances are not present here. See id. (rejecting the defense where, as was the case here, government agents instructed an informant to put the word out on the street that drugs were for sale). The defense is also foreclosed where the defendant is an "active participant" in the scheme. Id. at 1232. Ivy actively participated by meeting with undercover agents at Luby's to discuss the cocaine deal and by giving agents a pager number and telephone number so they could reach him. Second, Ivy argues that a violation of due process resulted from the referral of his case by state agents for federal prosecution. We recently rejected this argument in United States v. Carter, 953 F.2d 1449, 1461-62 (5th Cir. 1991). Finally, we find no merit in Ivy's argument concerning a constructive amendment to his indictment.

AFFIRMED.