56 F.3d 63
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Wendell WOOD, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Erroll WINTER, a/k/a Tony Tubbs, a/k/a Smiley, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Eddie PALMER, Defendant-Appellant.
 Nos. 94-5168, 94-5180, 94-5209.
 United States Court of Appeals, Fourth Circuit.
 Argued March 9, 1995.
Decided May 30, 1995.
 
 ARGUED: Robert LaPointe Bohannon, Bohannon, Bohannon & Hancock, Norfolk, VA, for appellant Winter; Danny Shelton Shipley, Norfolk, VA, for appellant Palmer; Brent Lee Rowlands, Rowlands & Associates, P.C., Virginia Beach, VA, for appellant Wood. Fernando Groene, Assistant United States Attorney, Norfolk, VA, for appellee. ON BRIEF: Helen F. Fahey, United States Attorney, Norfolk, VA, for appellee.
 Before RUSSELL, WILKINSON, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Wendell Wood, Errol Winter, and James Eddie Palmer appeal various aspects of their convictions and sentences under 21 U.S.C. Secs. 846 and 841(a)(1) for conspiracy to distribute powder cocaine and cocaine base (crack), distribution of cocaine, and possession with intent to distribute cocaine. Winter and Palmer also appeal their convictions under 18 U.S.C. Sec. 924(c)(1) for use of a firearm during a drug trafficking crime. Appellants argue that the prosecutor impermissibly commented on their failure to testify, challenge the sufficiency of the evidence against them, and raise numerous objections to their sentences. Finding no merit in their arguments raised on appeal, we affirm.
 
 I.
 
 2
 Viewed in the light most favorable to the government, Glasser v. United States, 315 U.S. 60, 80 (1942), the facts are as follows. Defendant Winter, a/k/a/ "Smiley," organized and controlled a drug ring that distributed powder and crack cocaine[1] in the Virginia Beach, Virginia, area from January of 1988 to October of 1992. In 1988, Winter relocated his drug operation from New York to Virginia Beach, bringing several confederates with him, including friends, relatives, and his girlfriend, Damita "Mimi" Owens. Winter then recruited others in the Virginia Beach area to help distribute cocaine, and sold cocaine primarily through James Lee "Fat Dog" White. White also acted as Winter's enforcer. Winter bought large quantities of powder cocaine from his suppliers, Mark Alexis and Stephen McMillan. Winter, White, and other co-conspirators then converted the powder into crack cocaine for distribution. At Winter's instruction, White sold cocaine to defendants Palmer and Wood, as well as to other dealers. On different occasions, Winter "fronted" or sold powder cocaine to Mimi Owens, who then sold the cocaine to defendant Palmer. Palmer, in turn, converted the powder into crack cocaine and supplied local "crack houses" through other low-level distributors in the organization. On one occasion Palmer converted powder cocaine into crack at White's mother's house. When defendant Wood, who was Palmer's cousin, needed a buyer for his cocaine in the Virginia Beach area, Palmer introduced Wood to White. White in turn introduced Wood to Winter. Wood, Marilyn Claudio, and Marino Ramirez brought powder cocaine from New York which Wood sold to Winter. Wood also sold powder cocaine to Palmer and White.
 
 
 3
 During a fourteen-day trial, numerous witnesses testified, including law enforcement agents, dozens of co-conspirators, and White.[2] The jury found all three Appellants guilty of conspiracy and numerous counts of distribution of and possession with intent to distribute cocaine. The jury also found Winter and Palmer guilty of using a firearm during a drug trafficking crime, but acquitted Wood on that charge. The district court sentenced each Appellant to life imprisonment on the conspiracy charge. Additionally, the court sentenced Winter and Palmer each to sixty months imprisonment on the firearms charges, to run consecutively with their conspiracy sentences. The court ordered Appellants' sentences for distribution and possession to run concurrently with their conspiracy sentences. Appellants timely appealed their convictions and their sentences.
 
 II.
 
 4
 During closing argument the prosecutor repeatedly noted that the government's evidence relating to the drug distribution and to the conspiracy was "unrebutted." Appellants argue that calling the jury's attention to the fact that the evidence was "unrebutted" was an impermissible reference to their failure to testify or present evidence, in violation of the Fifth Amendment, and that the district court should have granted their motion for mistrial on that ground. A prosecutor's statement is an improper comment on a defendant's failure to testify if it was "manifestly intended" as such or if the character of the statement indicates that a jury would "naturally and necessarily" interpret it as such. United States v. Whitehead, 618 F.2d 523, 527 (4th Cir.1980). Furthermore, the statement should be evaluated "in the context in which it was made" to determine if it actually is an impermissible comment on a defendant's failure to testify. United States v. Percy, 765 F.2d 1199, 1204 (4th Cir.1985). During closing argument, it is acceptable to make reasonable inferences about the facts of the case. United States v. Brainard, 690 F.2d 1117, 1122 (4th Cir.1982), cert. denied, 471 U.S. 1099 (1985). Thus, permissible inferences may include comments on the strengths of the government's case and the weaknesses of the defendants' case, provided the comments are not such that they would naturally and necessarily be interpreted as commentary on the defendants' failure to testify.
 
 
 5
 Appellants rely on Rodriguez-Sandoval v. United States, 409 F.2d 529, 530 (1st Cir.1969), cert. denied, 414 U.S. 869 (1973), to argue that the prosecutor's repeated statements during closing argument that the government's evidence was not rebutted or contradicted amount to reversible error. We disagree that the number of times the prosecution uttered the word "unrebutted" must lead to the natural and necessary conclusion that these statements commented on Appellants' failure to testify. We also note that in Rodriguez the only witnesses to the drug sale were the defendant and an undercover agent. Thus, the First Circuit indicated the statements that the undercover agent's testimony was not contradicted could only "naturally and necessarily" be understood as commenting on the defendant's failure to testify because the defendant was the only other source of rebuttal. Here, numerous witnesses testified about Appellants' roles in the conspiracy, and inconsistencies in those witnesses' versions of the facts could have contradicted some of the evidence of conspiracy.[3] The district court emphasized this distinction when, in denying Appellants' mistrial motion, it noted that the prosecution "never said unrebutted by the defense." (J.A. 1315) (emphasis added).
 
 
 6
 The district court also cured any misimpression the jury might have inferred from the prosecution's comments by instructing the jury twice at the beginning of the trial and again during the jury charge that no defendant was required to testify or to present any evidence because the burden of proof was on the government. See Whitehead, 618 F.2d at 528. Based on our review of the record, we find no constitutional error here because the prosecutor's statements, though perhaps unwise, were not of such character that a jury could naturally and necessarily take them as a comment on Appellants' failure to testify.
 
 III.
 
 7
 Appellants next challenge the sufficiency of the evidence used to convict them.[4] We review sufficiency of the evidence under the standard set forth in Jackson v. Virginia, 443 U.S. 307, 319 (1979), which inquires whether "any rational trier of fact could have found the essential elements of the crime [charged] beyond a reasonable doubt" when the evidence is viewed in the light most favorable to the government. See also United States v. Giunta, 925 F.2d 758, 764 (4th Cir.1991). A jury verdict must be sustained if there is substantial evidence to support it. United States v. Blue, 957 F.2d 106, 107 (4th Cir.1992). Appellants first challenge the sufficiency of the evidence to show a single conspiracy involving all three Appellants. Next, Winter challenges the sufficiency of the evidence to convict him on two counts of possession with intent to distribute cocaine. We address each argument in turn.
 
 A.
 
 8
 The district court instructed the jury that it could convict each Appellant if the evidence demonstrated each defendant's involvement in a single conspiracy, but if the evidence indicated multiple conspiracies, Appellants should be acquitted on the single conspiracy charge. Appellants maintain that the evidence did not support their convictions for participating in a single conspiracy, but instead showed the existence of several different conspiracies. We disagree, and for the following reasons find that the verdicts against Appellants were based on sufficient evidence of a single conspiracy in which all three willfully participated.
 
 
 9
 To prove a single conspiracy, the government must show an agreement between Appellants to undertake illegal conduct relating to controlled substances, and also show each Appellant's willful joinder in that agreement. United States v. Clark, 928 F.2d 639, 641-42 (4th Cir.1991). A defendant's participation in and knowledge of the goals of a conspiracy may be shown by circumstantial evidence. Giunta, 925 F.2d at 764. A conspirator who joins the plan to conspire on one occasion is bound by the reasonably foreseeable acts of other coconspirators in furtherance of the conspiracy, and may be convicted accordingly, even if he does not participate in all acts of the conspiracy. United States v. Bell, 954 F.2d 232, 236 (4th Cir.1992), cert. denied, 114 S.Ct. 112 (1993).
 
 
 10
 "Whether there is a single conspiracy or multiple conspiracies, as well as an agreement to participate in the conspiracy, is a question of fact for the jury and we must affirm its finding of a single conspiracy 'unless the evidence, taken in the light most favorable to the government, would not allow a reasonable jury so to find.' " United States v. Harris, 39 F.3d 1262, 1267 (4th Cir.1994) (quoting United States v. Urbanik, 801 F.2d 692, 695 (4th Cir.1986)). Proof of a single conspiracy in a large scale drug operation "can often be inferred from the totality of circumstances shown by the Government." Id. Additionally, repeated transactions involving various players over time can be evidence of a single conspiracy if there is an "overlap of key actors, methods, and goals" as there was here. United States v. Leavis, 853 F.2d 215, 218 (4th Cir.1988). A single conspiracy does not require a "discrete, identifiable organizational structure" and can be shown by evidence of a "mutual interest in sustaining the overall enterprise of catering to the ultimate demands of a particular drug consumption market." United States v. Banks, 10 F.3d 1044, 1054 (4th Cir.1993), cert. denied, 114 S.Ct. 2680, and 114 S.Ct. 1851 (1994).
 
 
 11
 The government elicited extensive testimony from over fifty witnesses, most of them former customers or dealers of Appellants, providing the details of a large scale conspiracy to distribute cocaine in the Virginia Beach area. The evidence indicated an overlap of key actors (Winter, as leader of the drug ring, and Wood and Palmer, as primary participants), of methods (purchasing powder cocaine and converting it into crack cocaine), and of goals (distribution of crack cocaine to users throughout the Virginia Beach area) of a conspiracy. Leavis, 853 F.2d at 218; see also Banks, 10 F.3d at 1054. From the evidence at trial, a rational juror could conclude beyond a reasonable doubt that Winter ran a drug distribution ring that converted powder cocaine into crack cocaine for street-level distribution; that Palmer was a part of this conspiracy because he bought powder from Winter's girlfriend, Mimi, and from Winter's enforcer, White, and converted that powder into crack cocaine for distribution to local crack houses; that Wood was a part of this conspiracy because he supplied Winter with powder cocaine to be converted into crack for street-level distribution; and that all three acted to further their mutual interest in meeting the demands of the Virginia Beach cocaine market. Viewing this evidence in the light most favorable to the government, there was more than substantial evidence to support the jury's determination that Appellants were involved in a single conspiracy.
 
 B.
 
 12
 Winter also challenges the sufficiency of the evidence to convict him for possession with intent to distribute one kilogram of cocaine in Virginia Beach on August 10, 1990, and another kilogram on August 16, 1990. He contends that the evidence at trial was not sufficient to show he possessed cocaine on those two specific dates. To the contrary, we find that the testimony of Wood's girlfriend, Michelle Claudio, and the hotel records and airline records admitted into evidence, support Winter's convictions for possession during those periods. Proof of possession on the exact date alleged is not a requirement of conviction in this instance. The indictment charged Winter with possession with intent to distribute one kilogram of cocaine "[o]n or about August 10, 1990," and another kilogram "[o]n or about August 16, 1990." (J.A. 61-62.) The evidence is sufficient to convict in this case because it proved that the "crime[s] occurred reasonably near the date charged in the indictment." United States v. Brewer, 1 F.3d 1430, 1437 (4th Cir.1993) (proof of possession in March or April sufficient to convict when indictment alleged possession with intent to distribute " '[i]n or about February' " of same year).
 
 
 13
 Claudio testified that she, Wood, and Ramirez went to Virginia to sell two kilograms of cocaine to Winter, that Winter only bought one kilo and rejected the second, and that she flew to New York with Ramirez to obtain a second kilogram which she then gave to Wood about a week later to deliver to Winter. She further testified that Wood went to Winter's house to deliver the second kilogram of cocaine, although she did not actually see Wood deliver the cocaine to Winter. The government admitted evidence to support Claudio's testimony. Hotel receipts showed that Wood and Claudio stayed in various hotels in the Virginia Beach area between August 2 and August 16, 1990. In their hotel rooms, police found evidence including cocaine encrusted strainers and baggies, a plane ticket with White's beeper number on it, $2500 cash, and a gun, but no drugs. An airline boarding pass (under an alias) dated August 15 from New York to Virginia corroborated Claudio's testimony of how she transported the second kilogram of cocaine into Virginia.
 
 
 14
 From this evidence, a rational jury reasonably could conclude that Winter possessed with intent to distribute one kilogram of cocaine "[o]n or about August 10, 1990," and another kilogram "[o]n or about August 16, 1990," as charged in the indictment. (J.A. 61-62.) Thus, the evidence was sufficient to convict Winter on these charges. Harris, 39 F.3d at 1267; Giunta, 925 F.2d at 764.
 
 IV.
 
 15
 Winter next argues that the district court erred in admitting evidence, pursuant to Fed.R.Evid. 404(b), that he sold heroin, because this evidence was extremely prejudicial and, he contends, was unrelated to the charged conspiracy to distribute cocaine. Winter moved in limine at the beginning of trial to preclude any reference to heroin, and made a continuing objection to the mention of heroin.
 
 
 16
 Rule 404(b) prohibits admission of "other crimes, wrongs, or acts" when that similar acts evidence is intended solely to prove the bad character of the defendant. Evidence of a defendant's similar acts is admissible, however, if it is part of the res gestae of the crime charged, such as when it provides part of the full context of the crime or is so intimately connected to the crime that it is necessary to complete the story of the crime. United States v. Masters, 622 F.2d 83, 86 (4th Cir.1980); United States v. Brewer, 1 F.3d 1430, 1436 (4th Cir.1993); cf. United States v. Madden, 38 F.3d 747, 751-52 (4th Cir.1994) (evidence of defendant's prior drug use admissible under Rule 404(b) to show motive for committing bank robbery if the financial needs of defendant's drug habit are sufficient to establish motive for the robbery). We agree with the government's argument that Winter's heroin dealing was sufficiently related to the cocaine conspiracy to be admissible.
 
 
 17
 Winter dealt heroin to finance his cocaine distribution network. White testified that Winter purchased heroin with money from his cocaine sales, and purchased cocaine with money from heroin sales. White also testified that Winter had White rob his cocaine supplier, McMillan, in order to pay for a large heroin purchase. Therefore, not only were the heroin sales made during the course of the conspiracy, they were an intricate part of Winter's plan, in conjunction with his other co-conspirators, to provide cocaine to the Virginia Beach market. Thus, we find that this evidence demonstrated the res gestae of the crime and, therefore, the district court did not abuse its discretion in admitting this evidence. Masters, 622 F.2d at 87-88.
 
 V.
 
 18
 Winter and Palmer challenge the district court's denial of their motions for acquittal on charges of possessing a firearm during drug trafficking, 18 U.S.C. Sec. 924(c). They argue that no guns were admitted into evidence and that no testimony linked them with guns in the fall of 1989, as alleged in the indictment. We disagree with their assessment that the evidence was insufficient to convict under Sec. 924(c).
 
 
 19
 We review the denial of a motion for acquittal "under the familiar sufficiency of the evidence standard." United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir.), cert. denied, 112 S. Ct 3051 (1992). Evidence that a firearm was available to protect a defendant in connection with his drug trafficking activities is sufficient to support a conviction under Sec. 924(c). United States v. Ivy, 973 F.2d 1184, 1189 (5th Cir.1992), cert. denied, 113 S.Ct. 1826 (1993). Eyewitness testimony that a gun was used during the commission of a crime is likewise sufficient evidence for a conviction under Sec. 924(c). United States v. Jones, 907 F.2d 456, 460 (4th Cir.1990), cert. denied, 498 U.S. 1029 (1991), and 113 S.Ct. 235, and 113 S.Ct. 1335 (1993).
 
 
 20
 Numerous witnesses testified to possession of guns by Winter and Palmer during the course of their drug trafficking activities. For example, White provided Winter with guns in 1989 during the time he was selling large quantities of cocaine for Winter. McMillan testified that Winter and White had guns when they came to Alexis's house in Virginia Beach to enforce Alexis's debt to Winter for past cocaine deals. Mimi Owens saw both Winter and Palmer carry guns during 1989 when she was buying cocaine from Winter and selling it to Palmer. Barbara Williams testified she saw Palmer with a gun when he was investigating the theft of crack from a crack house supplied by Palmer. Under the sufficiency of the evidence standard of review, there was more than sufficient evidence that Winter and Palmer used the guns during the relevant period to provide protection for their drug trafficking activities. Ivy, 973 F.2d at 1189.
 
 VI.
 
 21
 Next, Wood argues that his sentence should not have been enhanced under U.S.S.G. Sec. 2D1.1(b) because there was no evidence that he possessed a firearm during the conspiracy. We give substantial deference to a district court's factual determinations on sentencing issues. Brooks, 957 F.2d at 1148. Such factual determinations are not clearly erroneous if supported by a preponderance of the evidence. Id. Evidence at trial indicated that the police recovered a gun from under Wood's bed when they raided Wood and Claudio's room at the Days Inn on August 16, 1990, around the time that Wood sold a kilogram of cocaine to Winter. Claudio testified that police recovered no drugs in that raid because the remaining drugs were in a nearby hotel room. Claudio also testified that Wood carried a nickel-plated gun when he came to Virginia to sell cocaine to Winter. Based on this evidence, we cannot conclude that the district court's factual finding on sentencing was clearly erroneous.
 
 VII.
 
 22
 Wood raises two challenges under Bruton v. United States, 391 U.S. 123 (1968), to the use of a co-conspirator's statement against him--once during trial and again during closing argument. In Bruton, the Supreme Court held that the Confrontation Clause is violated if a confession by a non-testifying co-defendant that names the defendant as a participant in the crime is admitted. However, in Richardson v. Marsh, 481 U.S. 200, 211 (1987), the Court held that the Confrontation Clause is not violated if the defendant's name and direct references to the defendant are redacted from the confession and a proper limiting instruction is given. A redacted statement that does not "on its face" incriminate a defendant is admissible, even if incrimination can be inferred from other admitted evidence. United States v. Vogt, 910 F.2d 1184, 1191-92 (4th Cir.1990), cert. denied, 498 U.S. 1083 (1991).
 
 A.
 
 23
 First, Wood challenges the use at trial of redacted testimony concerning a confession by co-conspirator Gerry "Cookie" McCoy, arguing that introduction of this evidence violated his rights under the Confrontation Clause of the Sixth Amendment. McCoy was not present at trial. FBI Agent Meadows testified that McCoy stated he booked hotel rooms at the Days Inn on August 15, 1990.[5] Meadows redacted the statement by replacing McCoy's references to "Wood" with "the unnamed co-conspirator." (J.A. 1150-55.) Wood claims error because the court did not give a limiting instruction at the time Agent Meadows testified about McCoy's statement, but instead gave one several days later during the jury charge.
 
 
 24
 In his motion in limine before trial, Wood requested a limiting instruction about McCoy's statement, but did not request the instruction to be given contemporaneously with the introduction of testimony about McCoy's statement. Nor did he request a contemporaneous limiting instruction during trial when Agent Meadows testified about McCoy's statement. Because Wood did not challenge the lack of a contemporaneous instruction at trial, we review for plain error. See United States v. Marsh, 894 F.2d 1035, 1039 (9th Cir.1989), cert. denied, 493 U.S. 1083 (1990). "It is the rare case in which an improper jury instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." Henderson v. Kibbe, 431 U.S. 145, 154 (1976). Richardson requires a limiting instruction, but an instruction given during the jury charge is sufficient "unless there is an overwhelming probability that the jury will be unable to follow the court's instructions." United States v. Ford, 872 F.2d 1231, 1239 (6th Cir.1989) (internal quotations and citation omitted), cert. denied, 495 U.S. 918 (1990). The district court gave a proper limiting instruction during the jury charge, and the record reflects no "overwhelming probability" that the jury could not follow that instruction. Thus, we find there was no plain error, particularly in light of the fact that Claudio directly testified to the same matters covered by McCoy's statement.
 
 B.
 
 25
 During closing argument, the prosecutor twice mentioned Wood's name in connection with the McCoy statement. After the prosecutor finished his closing argument, Wood objected and requested a limiting instruction. Although the district court gave a limiting instruction, Wood argues that by directly linking his name to McCoy's statement, the prosecutor violated Richardson and Vogt, and that this Bruton error was too prejudicial to be corrected by a limiting instruction.
 
 
 26
 We need not reach the merits of this argument, however, because any error that did occur was definitely harmless under Fed.R.Crim.P. 52(a). At the time of the prosecutor's slip of the tongue, the district court instructed the jury that closing argument is not evidence. Again during the jury charge, the district court gave a limiting instruction explaining Wood's right not to testify and his Sixth Amendment right to confront witnesses. The court further instructed the jury that it must restrict McCoy's confession to evidence against McCoy. We presume the jury obeyed these instructions. Jones, 907 F.2d at 460. To the extent that there may have been any Bruton error, this error was harmless as any "testimony erroneously admitted was merely cumulative of other overwhelming and largely uncontroverted evidence properly before the jury." Brown v. United States, 411 U.S. 223, 231 (1973). Independent evidence from Claudio's testimony directly corroborated McCoy's statement, further rendering any error harmless. Because the evidence of Wood's guilt was so overwhelming, we find that the prosecutor's misstatement could not have affected Wood's substantial rights under a harmless error analysis.
 
 VIII.
 
 27
 Winter and Wood challenge the district court's determination during sentencing of the quantity of drugs attributed to each Appellant in the commission of the offense.
 
 
 28
 Winter argues that because no drugs were confiscated from him and because the amount attributed to him during sentencing was not alleged in the indictment, the court erred by attributing all of the drugs from the entire conspiracy to him during sentencing. However, the Sentencing Guidelines indicate that "quantities of drugs not specified in the count of conviction may be considered in determining the offense level," and that the court may approximate quantity when no drugs are seized. U.S.S.G. Sec. 2D1.1, comment. (n.12); United States v. Williams, 977 F.2d 866, 870 (4th Cir.1992), cert. denied, 113 S.Ct. 1342 (1993).
 
 
 29
 Next, Winter argues the facts used to calculate sentencing quantity must have "some indicium of reliability beyond mere allegation." United States v. Robison, 904 F.2d 365, 371 (6th Cir.) (internal citation and quotation omitted), cert. denied, 498 U.S. 946 (1990). He contends that the facts upon which the district court relied were unreliable because the calculation of quantity was based on testimony of convicted drug dealers. A sentencing court may consider evidence reliable, even if it would not have been admissible at trial. U.S.S.G. Sec. 6A1.3(a). The quantity here was based on trial testimony, and the judge has the ability to determine credibility of witnesses in deciding whether to believe their testimony. At sentencing, FBI Agent Meadows testified he determined drug quantity based on the trial testimony and excluded matters that "were mentioned barely." (J.A. 1522.) He arrived at a minimum quantity of 56 kg crack cocaine, and a minimum powder cocaine quantity of 4 kg. Our review of the record indicates that the district court was extremely careful to make sure that the quantities of powder were not double counted after being cooked into crack and that the quantities to which witnesses testified were reasonably foreseeable to Winter. Furthermore, the district court carefully reviewed the sentencing testimony and its trial notes before adopting the suggested quantity. Therefore, we find no clear error in the determination of the quantity of cocaine reasonably foreseeable to Winter for sentencing purposes. Williams, 977 F.2d at 870.
 
 
 30
 Wood finally argues the district court erred in accepting Agent Meadow's conversion of the 4.4 kg of powder directly attributed to Wood into 3.6 kg of crack. Wood contends that there was no evidence he sold or distributed crack cocaine. A member of a conspiracy, however, may be held liable during sentencing for the reasonably foreseeable acts of his fellow co-conspirators. U.S.S.G. Sec. 1B1.3. Agent Meadows testified at sentencing that he arrived at a quantity of 3.6 kg of crack based on the testimony and on his own investigations which indicated that 4.4 kg of powder would cook down into 3.6 kg of crack. He further testified that even though Wood sold only powder cocaine, the reason Meadows converted the powder into crack for sentencing was because Wood sold cocaine to his cousin, Palmer, and Wood knew that Palmer was cooking the powder down and selling it as crack. The district court was careful to ensure that Agent Meadows did not double count any of the cocaine that was converted to powder. Therefore, we find no clear error because the record indicates the testimony was sufficiently reliable to support the factual finding of foreseeable quantity. Williams, 977 F.2d at 870.
 
 IX.
 
 31
 At sentencing, Winter's base offense level was enhanced four levels as a leader or organizer of five or more people, and Wood's base offense level was enhanced three levels as a manager or supervisor of five or more people. Winter and Wood challenge these enhancements for their controlling roles in the conspiracy pursuant to U.S.S.G. Sec. 3B1.1. They argue that the government must identify the persons over whom they had authority, United States v. Barbontin, 907 F.2d 1494, 1498 (5th Cir.1990), and there was no evidence that they individually exercised control over five or more people. We disagree.
 
 
 32
 Contrary to Appellants' first argument, the Fifth Circuit in Barbontin stated "that the identities of the transactional participants need not be expressly proved for purposes of" an enhancement under Sec. 3B1.1. Id. In determining a conspiracy defendant's aggravating role under Sec. 3B1.1, the district court may consider all relevant conduct within the scope of Sec. 1B1.3, including "all reasonably foreseeable acts and omissions in furtherance of the jointly undertaken criminal activity." U.S.S.G. Sec. 1B1.3; U.S.S.G. Ch. 3, Pt.B, intro. comment.; see also United States v. Caballero, 936 F.2d 1292, 1298-99 (D.C.Cir.1991) (noting that Barbontin was decided before a 1990 amendment to section 3B1 allowed consideration of "relevant conduct" as defined by Sec. 1B1.1), cert. denied, 502 U.S. 1061 (1992). Here, the record reveals that the district court properly considered each Appellant's authority over certain members of the conspiracy because the acts of those co-conspirators in furtherance of the conspiracy were reasonably foreseeable.
 
 
 33
 As to Appellants' second argument, a defendant does not have to exercise personal control over five people to merit a Sec. 3B1.1 enhancement. The requirement for enhancement is that the defendant must control a criminal activity that in turn involves five or more participants. Sec. 3B1.1; See United States v. Melton, 970 F.2d 1328, 1334-35 (4th Cir.1992). Thus, a district court may justify a Sec. 3B1.1 enhancement by identifying actors in the conspiracy who were foreseeable to each Appellant and over whom each Appellant had authority.
 
 
 34
 The conspiracy charged had eleven named co-defendants and numerous other co-conspirators. Agent Meadows testified at sentencing, based on trial testimony, that Winter "ran the conspiracy," and Meadows proceeded to outline the multiple participants in the crime. (J.A. 1502.) Thus, there was evidence that Winter organized the conspiracy. Agent Meadows also testified that Wood directly supervised Claudio, Ramirez, and McCoy during his sale of two kilograms of cocaine to Winter. This indicated Wood exercised a supervisory role in a drug conspiracy involving more than five participants. Based on this evidence, we cannot say that the district court's enhancements were clearly erroneous.
 
 X.
 
 35
 Based on the foregoing, we affirm Appellants' convictions and sentences. Because the remaining issues raised by Appellants clearly have no merit, we do not address them separately.[6]
 
 AFFIRMED
 
 
 [1]
 Throughout this opinion we use the term "cocaine" generically to include crack and powder cocaine together, unless we specifically refer to cocaine in either the crack or powder form
 
 
 [2]
 White pled guilty and testified as the key witness at trial
 
 
 [3]
 The court in Rodriguez noted that "[a] different case might be presented if it were clear from the record that there was someone other than himself whom the defendant might call as a witness." 409 F.2d at 531
 
 
 [4]
 We note initially that Appellants' underlying theory behind most of their sufficiency of the evidence arguments is that the witnesses against them were also involved in drug dealing, and that most of these witnesses had been arrested or sentenced on drug related charges. Appellants argue these witnesses were not credible because they testified in hopes of immunity from prosecution or a reduced sentence, and thus their testimony is not sufficient to support a conviction. We reject this argument because credibility is a quintessential question for the jury and is not for us to weigh on appeal. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982)
 
 
 [5]
 This was during the time period when Wood sold two kilograms of cocaine to Winter
 
 
 [6]
 Appellants also argue the court erred by (1) denying their motion for severance and (2) refusing to grant a mistrial after the prosecutor mentioned in the jury's presence that Winter's attorney refused to stipulate to certain records