IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 94-20861

Summary Calendar
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JUAN CARLOS MONTANO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
(94 CR 123 4)
_____
September 18, 1995


Before KING, SMITH, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Juan Carlos Montano appeals his conviction for aiding and abetting possession with intent to distribute cocaine and conspiracy to possess with intent to distribute cocaine. He was sentenced to serve concurrent terms of 151 months in prison and five years supervised release on each count. His only argument

_____

[*]Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the court has determined that this opinion should not be published.

on appeal is that the evidence is insufficient to support his convictions.  We affirm.

When the sufficiency of the evidence is challenged, this court reviews the evidence in the light most favorable to the Government, making all reasonable inferences and credibility choices in favor of the verdict.  Glasser v. United States, 315 U.S. 60, 80 (1942).  The conviction must be affirmed if any rational trier of fact could have found that the evidence established guilt beyond a reasonable doubt.  United States v. Smith, 930 F.2d 1081, 1085 (5th Cir. 1991).

The jury is in a unique position to determine the credibility of the various witnesses.  United States v. Layne, 43 F.3d 127, 130 (5th Cir.), cert. denied, 115 S. Ct. 1722 (1995). This court defers to the jury's resolutions of conflicts in the evidence.  Id.

To convict Montano of conspiring to distribute cocaine, the Government must prove an agreement between two or more persons to violate the narcotics laws, that Montano knew of the conspiracy, and that he voluntarily participated in it.  United States v. Sanchez-Sotelo, 8 F.3d 202, 208 (5th Cir. 1993), cert. denied, 114 S. Ct. 1410 (1994).  The existence of the conspiracy may be established by circumstantial evidence.  Discrete circumstances that, standing alone, would be inconclusive may prove a conspiracy when taken together and corroborated by moral coincidences.  United States v. Rodriquez-Mireles, 896 F.2d 890, 892 (5th Cir. 1990).

"Although mere presence at the scene of the crime or a close association with a co-conspirator alone cannot establish voluntary participation in a conspiracy, . . . presence or association is a factor that, along with other evidence, may be relied upon to find conspiratorial activity by the defendant." United States v. Cardenas, 9 F.3d 1139, 1157 (5th Cir. 1993) (citations omitted), cert. denied, 114 S. Ct. 2150 (1994). Further, knowledge may be inferred from the circumstances.  Id. Once the Government establishes an illegal conspiracy, "only slight evidence is needed to connect [Montano to the] conspiracy."  United States v. Thomas, 12 F.3d 1350, 1359 (5th Cir.) (internal quotation and citation omitted), cert. denied, 114 S. Ct. 1861 and 2119 (1994).

To convict a defendant of possession with intent to distribute cocaine the Government must show that he knowingly had actual possession of the cocaine, United States v. Ivy, 973 F.2d 1184, 1188 (5th Cir. 1992), cert. denied, 113 S. Ct. 1826 (1993), or that he knowingly had constructive possession of the cocaine. Constructive possession includes ownership, dominion, or control over the cocaine.  See United States v. Shabazz, 993 F.2d 431, 441 (5th Cir. 1993).  Possession of an amount larger than could be personally consumed will support a finding of intent to distribute.  United States v. Inocencio, 40 F.3d 716, 725 (5th Cir. 1994).

Aiding and abetting requires proof that the defendant associated with a criminal venture, participated in the venture,

3

and sought by action to make the venture successful.  United States v. Fierro, 38 F.3d 761, 768 (5th Cir. 1994), cert. denied, 115 S. Ct. 1431 (1995).  Association with the venture means the defendant shared the principal's criminal intent; participation means "the defendant acted in some affirmative manner designed to aid the venture."  United States v. Jaramillo, 42 F.3d 920, 923 (5th Cir.), cert. denied, 115 S. Ct. 2014 (1995).

We turn now to the record of Montano's trial.  Police conducting surveillance on April 26 and 27, 1994, followed narcotics suspects to the Parqueview Apartments where the police later seized over 100 kilograms of cocaine.  Officer Fern testified that Ledesma and Tellez, two of Montano's co-conspirators, drove in a blue van to a shopping mall where Ledesma used the pay telephone.  From there, the police followed Ledesma and Tellez as they drove to a hospital and a restaurant.  Finally, Ledesma and Tellez drove to the Parqueview Apartments, exited the van, and entered apartment 905.  Shortly afterward, Ledesma and Obando, another co-conspirator, left apartment 905 in the blue van.  They drove to a mall where they made multiple telephone calls.  Ledesma and Obando left the mall travelling in an indirect route to a Chevron Station where Ledesma made more phone calls.  From the Chevron Station, Ledesma walked across the street to a Price Buster Store where Ledesma again used the telephone.  When the officer next saw Ledesma and Obando, they were travelling in separate vehicles; Ledesma drove the blue van

4

and Obando drove a white Blazer.  They drove directly back to the Parqueview Apartments.

Montano was waiting in the parking lot of the Parqueview Apartments.  After Obando parked the Blazer, Montano conversed with Obando, looked back and forth down the parking lot, and then walked to the back of the vehicle.  Montano removed a large, green, Army-type duffel bag from the back of the Blazer and carried it toward apartment 905 of the complex.  The bag appeared to be full and heavy.  Officer Hammons testified that the duffel bag appeared to be full of kilo-sized packages.  Shortly afterward, Montano was seen coming out of apartment 905 and walking back in the direction of the S-10 Blazer.  When Montano saw a person who was apparently an undercover police officer putting his telephone back into his pocket, he was startled.  The officer described Montano's eyes as "really big."  Montano was then seen leaving the area in a small car.  A police officer was informed that suspects were leaving the scene.  The police apprehended Montano and Obando in a Honda shortly afterward.  The police seized cocaine and duffel bags from apartment 905.  A canine handler testified that his dog "alerted" at the tailgate of the Blazer, indicating that the odor of narcotics could be detected there.  Testimony indicated that cocaine was found inside a duffel bag in the Blazer as well.

Turning to Montano's argument, Montano contends that the Government did not produce evidence that he knew or had any contact with the co-conspirators prior to the time when he was

seen conversing with Ledesma near the Blazer and when he was seen carrying the duffel bag from the Blazer to apartment 905. Montano asserts, therefore, that the Government failed to prove an agreement between him and the co-conspirators. He suggests that the jury had to infer that he made an agreement in the small amount of time that he was seen conversing with Ledesma. Montano further asserts that the Government failed to prove that he had knowledge, intent, or even possession of the cocaine. Montano maintains that carrying a bag from a vehicle to an apartment does not indicate knowledge of, or participation in, a drug conspiracy.

Montano moved for judgment of acquittal at the close of the Government's case, and he rested without presenting any additional evidence after the Government closed its case. The court denied Montano's motion.

Montano's actual involvement in the alleged conspiracy consists of conversing with Ledesma in the parking lot, carrying a duffel bag in the direction of apartment 905, appearing startled when he confronted an apparent police officer near apartment 905, and leaving the area shortly after he met the police officer near apartment 905. Although sparse, this evidence is sufficient to sustain Montano's convictions. Montano was seen carrying the duffel bag that appeared to be full of square, kilo-sized packages toward apartment 905. Cocaine and duffel bags were later found in the apartment and in the Blazer. Approximately 119.06 kilograms of cocaine was seized. The

quantity of drugs involved establishes the requisite intent to distribute.  See United States v. Sanchez, 961 F.2d 1169, 1176 (5th Cir.) ("Intent to distribute is typically inferred from the fact that an amount is too large for any purpose other than distribution."), cert. denied, 113 S. Ct. 330 (1992).

Montano contends that the Government did not produce evidence that he knew of, or agreed to become a part of, the drug conspiracy.  He asserts that the jury had to infer from the evidence that in that small time frame when Montano conversed with Ledesma at the back of the Blazer, he agreed to join a drug conspiracy.

Montano's assertions ignore the fact that "[a]n agreement may be inferred from concert of action, participation from a collocation of circumstances, and knowledge from surrounding circumstances."  Sanchez, 961 F.2d at 1174 (internal quotation omitted).  Contrary to Montano's position, testimony indicated that he was waiting for the Blazer when it arrived in the Parqueview Apartments parking lot.  Montano conversed with Ledesma and seemed to be following Ledesma's instructions to carry the duffel bag toward apartment 905.  Montano concedes on brief that he was following Ledesma's instructions to carry the bag.  Montano was seen looking "back and forth down the parking lot" while conversing with Ledesma.  Montano exited the apartment and walked back toward the Blazer.  When Montano rounded a corner and met a person who appeared to be a police officer, he became noticeably apprehensive.  Thirty to forty-five seconds later,

7

Montano was seen leaving the parking lot.  One duffel bag with cocaine remained in the Blazer.  These facts combined with Montano's hasty departure from the area provided sufficient evidence from which the jury could infer that Montano knew of the drug activity and agreed to participate in the conspiracy. Viewing the evidence in the light most favorable to the Government and drawing all reasonable inferences in favor of the verdict, the evidence is sufficient to support the convictions.

Montano's convictions are AFFIRMED.